**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| UNITED TAX GROUP, LLC, | : | Case No. 14-10486 (LSS) |
| | : | |
| Debtor. | : | |
| | : | |
| George L. Miller, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 15-50880 (LSS) |
| | : | |
| SWZ Financial II, LLC, | : | |
| Tax Help MD Inc., | : | |
| Allerand, LLC and | : | |
| Richard J. Sabella, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, IN
OPPOSITION TO THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Dated: October 31, 2016
   Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com

*Attorneys for George L. Miller,
  Chapter 7 Trustee*

**TABLE OF CONTENTS**

MEMORANDUM OF LAW……………………………………………………...…………1

I.  STATEMENT OF THE NATURE
    AND STATE OF THE PROCEEDING……………………………………………...2

II.  INTRODUCTION……………………………………………………………………2

   A.  The Mail……………………………………………………………….......8

   B.  The Managing Member of SWZ Was An Insider……………………......11

III.  ARGUMENT…………………………………………………………………………13

   A.  Legal Standard…………… ………………………………………………13

   B.  SWZ Is Not Entitled To Summary Judgment
       Under Counts I and II of the Complaint…………………………………14

       1.  The Debtor Was Insolvent Beginning in 2012…..…....................15

       2.  SWZ Received More Than It Would Have Under
           A Hypothetical Liquidation…………………….........................16

       3.  Ordinary Course of Business Defense Does Not Exist………...18

       4.  SWZ Was Not A Mere Conduit…..……………………………20

       5.  Closing Fees Were Transferred On Account Of
           Antecedent Debt…………………………………………...………23

   C.  SWZ Is Not Entitled to Summary Judgment on Count III,
       as the Trustee Has Proven That the Foreclosed/Transferred
       Assets Were Preferential Under 11 U.S.C. § 547(b)…………..………....24

       1.  Transfer In Lieu of Foreclosure Is A Preference.......................24

       2.  The Value of the Collateral Exceeded The Debt Balance Owed
           To SWZ on the Date of the Transfer…………………...............25

       3.  Estoppel Argument Against Trustee Is Meritless.....................26

**4.**    **There Are No Supervening Acts of Trustee Which Render Damage Calculations Speculative**...........................29

**5.**    **SWZ Received More Than It Would Have in Chapter 7 Liquidation**..................................30

**6.**    **SWZ Is Not A Mere Conduit**...................................30

**D.**    **The Trustee Has Proven Fraud As Alleged in Counts IV, V, VI and VII (11 U.S.C. § 548(a) and Florida Statutes Title XLI, §§ 726.105(1)(b), 726.106(1) and 726.106(2))**.................................30

**1.**    **The Transfers Were Constructively Fraudulent Under 11 U.S.C. § 548(a)(1) And, Therefore, Summary Judgment Should Be Denied With Respect To Count IV**............................30

**a.**    **The Debtor Did Not Receive Reasonably Equivalent Value**.......................................31

**b.**    **Estoppel Due to Trustee's Unclean Hands Argument Against Trustee Is Meritless**....................36

**2.**    **Summary Judgment Should Be Denied With Respect to Count V, As The Transfers Were Fraudulent Under Florida Statutes Title XLI, § 726.105(1)(b)**................36

**a.**    **"Triggering Creditor" Was Averred (and Exists)**.......37

**b.**    **Enforcement of a Security Interest Not a Defense for Insider Lacking Good Faith**................................38

**c.**    **Genuine Issue of Material Fact Exists Regarding Whether the Debtor Received Reasonably Equivalent Value (Two Year Transfers)**...................39

**d.**    **Estoppel Argument Against Trustee Is Meritless**........41

**e.**    **Harm to Existing/Future Creditors Supported by Evidence**...........................................41

**3.**    **Summary Judgment Should Be Denied With Respect to Count VI Because The Transfers Were Fraudulent As To Present Creditors Under Florida Statutes Title XLI, § 726.106(1)**.....................................42

iii

            **a.**       **The Debtor Did Not Receive Reasonably Equivalent Value**…………………………………………..42

      **4.**      **Summary Judgment Should Be Denied With Respect to Count VII Because The Transfers Were Fraudulent Under 11 U.S.C. § 544 And Florida Statutes Title XLI, § 726.106(2)**……………………………………43

            **a.**       **Section 726.106(2) Claim is Not Time Barred**…………43

            **b.**       **Ordinary Course of Business Defense Does Not Exist**...44

            **c.**       **SWZ Is Not a Mere Conduit**……………………………45

**E.**     **Summary Judgment Should Be Denied on Counts VIII, IX and X Because The Transfers Are Avoidable Under 11 U.S.C. § 550 and Under Florida Statutes Title XLI, § 726.108**..........................................45

      **1.**      **The Transfers Are Voidable Under 11 U.S.C. § 550 and FUFTA § 726.108**……………………………………..45

      **2.**      **Neither SWZ Nor Tax Help Are Entitled to Any Defenses Under 11 U.S.C. § 548(c) and FUFTA §§ 726.104(2) and 726.109(4)**……………………………………………...46

            **a.**       **SWZ Has No Defense Under 11 U.S.C. § 548(c) and FUFTA § 726.109(4)**……………………………………46

            **b.**       **Tax Help Did Not Provide Reasonably Equivalent Value Under FUFTA §§726.104(2) and 726.109**………46

            **c.**       **Trustee Can Recover From Tax Help Under 11 U.S.C. § 550(b)**………………………………………..48

      **3.**      **Summary Judgment Is Not Appropriate On The Question of Whether Tax Help Is A Transferee and/or What, If Any, New Value It Provided**…………………………50

**F.**     **Allerand Breached Its Fiduciary Duties to The Debtor And Sabella Assisted In The Breach And, Therefore, Summary Judgment Must Be Denied With Respect To Counts XI and XII**...................................51

      **1.**      **Allerand Owed Fiduciary Duties To The Debtor**…………...51

      **2.**      **Breach of Fiduciary Duty is a Colorable Claim Supported By Evidence**………………………………………………….52

**3.**   **Allerand Breached Its Fiduciary Duty**……………………………55

**4.**   **Defendants' "Unclean Hands" Argument (With Respect to Delaware Fiduciary Claims) is Meritless**………………………57

**5.**   **Sabella Aided and Abetted The Breach Of Fiduciary Duty**…..58

**IV.   CONCLUSION**……………………………………………………................ 59

## TABLE OF AUTHORITIES

**CASES**                                                        **PAGE**

*AASI Creditor Liquidating Trust v. Oracle USA, Inc.*
*(In re All Am. Semiconductor, Inc.)*,
    490 B.R. 418 (Bankr. S.D. Fla. 2013)..…….……….….…………………40

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)…………………………………………………..…..14

*Argus Mgmt. Grp. v. Gab Robins, Inc. (In re CVEO Corp.)*,
    327 B.R. 210 (Bankr. D. Del. 2005)……………………………….……….22

*Atlanta Shipping Corp. v. Chem. Bank*,
    818 F.2d 240 (2d Cir. 1987)………..…………………………………….32

*Becker v. Becker*,
    416 A.2d 156 (1980)………..……………………………………………47

*Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*,
    229 F.3d 245(3d Cir. 2000)….……………………………………………...47

*Bur-Cam Group, LLC v. Pearson (In re Pearson)*,
    NO. 1:10-ap-001842010,
    Bankr. LEXIS 3553 (Bankr. M.D. Pa. Oct. 7, 2010)…..…………………….56

*Burtch v. Masiz (In re Vaso Active Pharms., Inc.)*,
    500 B.R. 384 (Bankr. D. Del. 2012)……………………………………49

*Carter v. West Publ'g Co.*,
    225 F.3d 1258 (11th Cir. 2000)…………………………………………...38

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)………..………………………….…..…………..……14

*Computer World Solution, Inc. v. Apple Fund, L.P.* (*In re Computer World Solution, Inc.*),
    427 B.R. 680 (Bankr. N.D. Ill. 2010)…………………………………19

*Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*,
    275 B.R. 641 (Bankr. M.D. Fla. 2002)…………………………………47

*Delta Mills, Inc. v. GMAC Comm. Fin., LLC (In re Delta Mills, Inc.)*,
    404 B.R. 95 (Bankr. D. Del. 2009)……..……………………………14

*Feeley v. NHAOCG, LLC*,
    62 A.3d 649 (Del. Ch. 2012)……….…………………………………………51, 58

*Foulk v. Donjon Marine Co., Inc.*,
    144 F.3d 252 (3d Cir. 1998)……………………………..……......14

*Gaudiosi v. Mellon*,
    269 F.2d 873 (3d Cir.), *cert. denied*, 361 U.S. 902 (1959)……..………………....26

*Gilbert v. Goble (In re N. Am. Clearing, Inc.)*,
    No. 6:10-ap-00151-KSJ, 2014 Bankr. LEXIS 4274
    (U.S. Bankr. M.D. Fla. Sep. 29, 2014)……………………….……….…..42

*Goldberg v. Sotheby's Int'l Realty, LLC (In re Sol, LLC)*,
    NO.: 11-01719-AJC, 2012 Bankr. LEXIS 3047
    (Bankr. S.D. Fla. June 3, 2012)…………………………....………………47

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*,
    343 B.R. 96 (Bankr. D. Del. 2006)……...…………………….…………21

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002)……….…………………………………….…..59

*Hays v. Jimmy Swaggart Ministries, et al.*,
    263 B.R. 203 (M.D. La. 1999)……….……………………………..47-48

*Henderson v. Buchanan*,
    985 F.2d 1021 (9th Cir. 1993)………………………………………………19

*In re Buchanan*,
    35 B.R. 842 (Bankr. E.D. Tenn. 1983)……...……………………………..38

*In re Grabill Corp.*,
    121 B.R. 983 (Bankr. N.D. Ill. 1990)……...………………………………40

*In re Hecht,*
    51 Bankr. 72 (Bankr. D.Vt. 1985)…..………......……………………………...35

*In re Petters Co.*,
    495 B.R. 887 (Bankr. D. Minn. 2013)……...…………………………...15

*In re Prevalence Health, LLC*,
    No. 1100068EE, 2012 Bankr. LEXIS 5255
    (Bankr. S.D. Miss. Nov. 7, 2012)……………………………………………19

*In re Seaway International Transport, Inc.*,
341 B.R. 333 (Bankr. S.D. Fla. 2006)……………………………………………………39

*In re Vilsack*,
356 B.R. 546, 2006 WL 3458257 (Bankr. S.D. Fla. 2006)…………...…………...40

*In re Venice-Oxford Assocs.*,
236 B.R. 820 (Bankr. M.D. Fla. 1999)…………………..………………………..44

*Jobin v. McKay (In re M&L Business Machine Co.)*,
84 F.3d 1330 (10th Cir. 1996)…….………………………………………….19, 47

*Joseph v. Frank (In re Troll Communs., LLC)*,
385 B.R. 110 (Bankr. D. Del. 2008)………….………………………………………15

*Kapila v. WLN Family Ltd. P'ship (In re LeNeve)*,
341 B.R. 53 (Bankr. S.D. Fla. 2006)………...………………………………………40

*Kassover v. Prism Venture Partners, LLC*,
53 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2008)…..………………………………5

*Keystone Driller Co. v. General Excavator Co.*,
290 U.S. 240, 78 L. Ed. 293, 54 S. Ct. 146 (1933)…...............…………………...27

*Kipperman v. Onex Corp.*,
411 B.R. 805 (N.D. Ga. 2009)………...………..……………………………...40

*Longview Aluminum, L.L.C. v. Brandt*,
431 B.R. 193 (N.D. Ill. 2010)…..………...…………………………………56

*Mandel v. M&Q Packaging Corp.*,
706 F.3d 157 (3d Cir. 2013)…………...…………………………………………38

*Menchise v. Clark (In re Dealers Agency Servs.)*,
380 B.R. 608 (Bankr. M.D. Fla. 2007)…..………………………………………..39

*Mennen v. Wilmington Tr. Co.*,
No. 8432-ML, 2015 Del. Ch. LEXIS 122 (Ch. Apr. 24, 2015)………......……….52

*Monsanto Co. v. Rohm & Haas Co.*,
456 F.2d 592, 598 (3d Cir.), *cert. denied*, 407 U.S. 934 (1972)…..………………27

*Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.)*,
321 B.R. 388 (Bankr. D. Del. 2005)………..…..……………………………....21

*New Valley Corp. v. Corporate Prop. Assocs. 2 and 3 (In re New Valley Corp.)*,
181 F.3d 517 (3d Cir. 1999)…………………………………………………...26

*Noland v. Hunter (In re Nat'l Liquidators, Inc.)*,
232 B.R. 99 (Bankr. S.D. Ohio 1999)…….………………………………………47

*Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*,
904 F.2d 588 (11th Cir.1990)……………………………………………………40

*North American Catholic Education Programming Foundation, Inc. v. Gheewalla*,
930 A.2d 92 (Del. 2007)……………………………………………………...53-54

*Northern Capital, Inc. v. Stockton Nat'l Bank (In re Brooke Corp)*,
458 B.R. 579 (Bankr. D. Kan 2011)……………………………………………23

*Odyssey Partners, L.P. v. Fleming Cos.*,
735 A.2d 386 (Del. Ch. 1999)…………..………………………………………..57

*Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*,
444 B.R. 51 (Bankr. D. Del. 2010)…..………………………………………..56

*Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*,
371 B.R. 589 (Bankr. D.N.H. 2007)…….………………………………………15

*Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*,
444 F.3d 203 (3d Cir. 2006)…………………………………………….31-32

*Pereira v. Cogan*,
267 B.R. 500 (S.D.N.Y. 2001)………………………………………………...55

*Quadrant Structured Products Co. v. Vertin*,
No. 6990-VCL, 2015 WL 2062115
(Del. Ch. May 4, 2015)…………………………………...…………………54

*Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*,
680 F.3d 1298 (11th Cir. 2012)……………………….………………………40

*Shubert v. Lucent Techs. Inc (In re Winstar Communs., Inc.)*,
554 F.3d 382 (3d Cir. 2009)…….....………………………………………...56

*Solomon v. Barman (In re Barman)*,
237 B.R. 342 (Bankr. E.D. Mich. 1999)…….………………………………56

*Sonowo v. U.S.*,
    No. 03-1122-GMS, 2006 U.S. Dist. LEXIS 83146
    (D.Del. Nov. 13, 2006)……………………..............................………………...26

*S. Indus. v. Jeremias*,
    66 A.D.2d 178 (N.Y. Supreme
    (App. Div., 2nd Dep't) 1978)…...………………………………………32-33

*S&R Corp. v. Jiffy Lube Int'l, Inc.*,
    968 F.2d 371 (3d Cir. 1992)…………………………………………………26

*United States v. State St. Bank & Tr. Co.*,
    520 B.R. 29 (Bankr. D. Del. 2014)………………………………………....26

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*,
    919 F.2d 206 (3d Cir. 1990)……….......……………………………………39

*Wetzel v. Tucker,*
    139 F.3d 380 (3d Cir. 1998)…………....…………………………………14

*8699 Biscayne, LLC v. Indigo Real Estate LLC (In re 8699 Biscayne, LLC)*,
    No. 08-01749-AJC, 2012 Bankr. LEXIS 1244
    (Bankr. S.D. Fla. Mar. 22, 2012)……………………...…………………….40

**STATUTES**

*11 U.S.C. § 101(31)*………………………………………………...55-56

*11 U.S.C. § 101(32)*………………………………………………......15

*11 U.S.C. § 108*………………………………………………………43-44

*11 U.S.C. § 544*………………………………………………………36-37

*11 U.S.C. § 547*………………………………………………*passim*

*11 U.S.C. § 548*………………………………………………*passim*

*11 U.S.C. § 550*………………………………………………20, 49

*12 Del. Code § 3303(a)*………………………………………………52

*FUFTA, Florida Statutes Title XLI, § 726.102(14)*………………………………......44

*FUFTA, Florida Statutes Title XLI, § 726.104(2)*…………………………………46-47

*FUFTA, Florida Statutes Title XLI, § 726.105(1)(b), et seq*………………………36-37, 39

*FUFTA, Florida Statutes Title XLI, § 726.106(1)*………………………………......…42

*FUFTA, Florida Statutes Title XLI, § 726.106(2)*………………………………………...43

*FUFTA, Florida Statutes Title XLI, § 726.108*...………………………………………...45

*FUFTA, Florida Statutes Title XLI, § 726.109(1)*………………………………………...46

*FUFTA, Florida Statutes Title XLI, § 726.109(4)*………………………………………...46

*Section 18-1104 of the Delaware Limited Liability Company Act*……………………….51

**RULES**

*Fed. R. Civ. P. 8(a)*…………………………………………………………………15-16

*Fed. R. Civ. P. 9(b)*…………………………………………………………………15-16

*Fed. R. Civ. P. 56(a)*………………………………………………………………..13

*Fed. R. Bank. P. 7056*.....................................................................................................13

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| UNITED TAX GROUP, LLC, | : | Case No. 14-10486 (LSS) |
| | : | |
| Debtor. | : | |
| | : | |
| George L. Miller, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 15-50880 (LSS) |
| | : | |
| SWZ Financial II, LLC, | : | |
| Tax Help MD Inc., | : | |
| Allerand, LLC and | : | |
| Richard J. Sabella, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE,**
**IN <u>OPPOSITION TO THE DEFENDANTS' MOTIONS FOR SUMMARY</u>**
**<u>JUDGMENT</u>**

George L. Miller, the chapter 7 trustee (the "<u>Trustee</u>") for the estate of United Tax

Group, LLC (the "<u>Debtor</u>"), the above-captioned debtor, by and through his counsel, Ciardi

Ciardi & Astin, hereby files this opposition (the "<u>Opposition</u>") to Defendant SWZ

Financial II, LLC ("<u>SWZ</u>") and, separately, Defendants Tax Help MD, Inc. ("<u>Tax Help</u>"),

Allerand, LLC ("<u>Allerand</u>") and Richard J. Sabella's ("<u>Sabella</u>") (collectively, SWZ, Tax

Help, Allerand and Sabella shall be referred to herein as "<u>Defendants</u>") motions for

summary judgment (the "<u>SWZ Motion</u>" and "<u>Tax Help Motion</u>;" together, the "<u>Motions</u>")

and accompanying memoranda of law (the "<u>SWZ MOL</u>" and "<u>Tax Help MOL</u>;" together,

the "<u>Memoranda</u>").  In support, the Trustee respectfully represents:

I.      **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

On June 25, 2015, the Trustee initiated the above-captioned adversary proceeding against the Defendants (Adv. No. 15-50880 (LSS)) (the "SWZ Adversary"). Through the SWZ Adversary, the Trustee seeks relief ranging from avoidance of transfers to breach of fiduciary duty. On or about July 30, 2015, the defendants filed an answer to the SWZ Adversary. On June 1, 2016, the Trustee filed a motion to compel discovery (the "Trustee's Discovery Motion") against the Defendants [Adv. D.N. 49]. On or about June 3, 2016, SWZ filed a motion to compel discovery (the "SWZ Discovery Motion" with the Trustee's Discovery Motion, the "Discovery Motions") against the Trustee [Adv. D. N. 50]. On July 14, 2016, this Court held a hearing on the Discovery Motions and orally ordered Tax Help, among others, to produce certain documents. To date, Tax Help has not produced the relevant documents. Fact discovery has not concluded.

On or about September 2, 2016, SWZ filed the SWZ Motion [Adv. D.N. 76]. On or about September 7, 2016, Tax Help, Allerand and Sabella filed the Tax Help Motion, which incorporated facts, definitions, affidavits and exhibits from the SWZ Motion. Accordingly, the Trustee files this opposition to both Motions.

II.     **INTRODUCTION**

This case is relatively simple and can be distilled into two words: arrogance and greed. SWZ, an insider to the Debtor, is attempting to divert the Court's attention from the real issues by continuous motion practice regarding non-issues. A review of the facts in this case from the beginning of 2012 makes the Trustee's case crystal-clear. The Debtor was operating a viable company that was the subject of a sexual harassment claim by Sarah

2

Wonders ("Wonders").  The Debtor's principal, Sabella, created a sham loan to extract cash for the benefit of the Debtor's equity holders (and to the detriment of the holder of the sexual harassment claim) in a fraud scheme.  Now, before discovery is even complete AND before the Defendants complete the production of relevant documents, they have filed yet another frivolous motion.[1]  This time, the Defendants have filed motions based upon false affidavits and, possibly, their fourth version of the same events.

Wonders was sexually harassed during the course of her employment with the Debtor.  Her harassment continued for seven (7) months despite her continuous pleas to management to address her hostile work environment.  After Wonders' many appeals to management went ignored, Wonders quit her job in May 2012.  Knowing that the prospect of a sexual harassment lawsuit was imminent, in 2012, the Debtor paid out $593,208.00 to insiders and shareholders and encumbered all assets all while purportedly borrowing $501,000.00 from SWZ (the "SWZ Loan").  Allerand received $100,000 from the SWZ Loan and $150,000, the day before the SWZ Loan as distributions of equity.  Allerand/Sabella received $350,000 in 2012 and $51,000 in 2013.  The aforementioned transfers do not include the amounts taken by other insiders.

These circumstances beg the question: why would a company need a loan for $500,000 at an interest rate of eighteen (18%) percent and no provisions allowing the company to cure a default, when in the calendar year 2012 it paid out almost $600,000 to insiders as fees and equity distributions?  *See* Exh. A to SWZ MOL (Credit Agreement) at

---

[1] As this Court is also aware, there are a number of outstanding rulings pending, including the Trustee's motion to compel discovery against the Defendants which was heard on July 14, 2016.  At the July 14, 2016 hearing, this Court required Tax Help to turnover relevant documents, which included correspondence to clients and relevant form 8851s.  *See* Tr. 7/14/16 Hrg. 20:3-6; 25:1-9; 27:16-24.  Three-and-a-half months later, no documents have been produced.  A request for summary judgment at this stage is nothing more than another ploy by the Defendants to saddle this Court, and the Trustee, with paper.

§§ 2.3, 9.1.  The answer to that question is simple: a company whose controlling insiders are trying to strip equity.  Moreover, the borrower (the Debtor) (i) was closely related to the lender (SWZ), (ii) was committed to ensuring that Wonders would not obtain any satisfaction from the Debtor in her harassment suit, and (iii) wanted to retain control of the Debtor's operations.

SWZ is a company owned by insiders of the Debtor; SWZ's owners are:  Sabella (the "S" in SWZ); Ward Welke ("Welke") (the "W" in SWZ); and Gary Zentner ("Zentner") (the "Z" in SWZ).  Zentner has been identified as the manager of the day-to-day operations of SWZ.  *See* Exh. M to SWZ MOL (Zentner Aff.) at ¶ 2; *see also* Exh. E to SWZ MOL (Sabella Aff.) at ¶ 25.  That being said, SWZ designated Sabella as its corporate designee under Federal Rules of Civil Procedure 30(b)(6) in connection with the deposition of SWZ regarding SWZ's motion to dismiss this case.  Zentner stated under oath that, before the SWZ Loan, he had *no interest of any kind*, direct or indirect, with the Debtor or Allerand.  *See* Exh. M to SWZ MOL (Zentner Aff.) at ¶ 3.  That statement, however, is a blatant lie.

GZ Investco, LLC, Zenter's company, received $97,500.00 in payments from the United Tax Group Dedicated Receivables Trust #2 Account (the "UTG Trust Account 2") in *January, February and March 2012, prior to the making of the SWZ Loan.*  A true and correct copy of the March 2012 statement for the UTG Trust Account 2 attached hereto as **Exhibit A**.  Zentner testified that certain investor loan trusts affiliated with the Debtor (Investor Loan Trust 1 and Investor Loan Trust 2) made investments in the Debtor which were allegedly used for marketing purposes.  *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 29:18 -30:4. He further testified that to the "extent revenue was generated from the client

4

from that marketing and sales effort, that revenue was paid back into the trust for a return to the investment group." *See id.* Zentner knew how these investor loan trusts worked because one of his companies, GZ Investco, LLC, participated in the trusts.[2] *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 30:10 -32:15. The Debtor did not disclose the existence of these accounts in the Schedules. Further, although the Credit Agreement identified these bank accounts as opened by the Debtor, the Debtor failed to disclose these accounts. This failure to disclose is material and willful and demonstrates that Sabella and Zentner have no credibility.

Moreover, at the time of the SWZ Loan, SWZ, Sabella, Welke and Zentner, were all affiliated with Allerand, the 99.90 percent profit owner of the Debtor.[3] *See* E-mails from Zentner dated October 28, 2013 and November 4, 2013 (collectively, the "Zentner Emails") attached hereto as **Exhibit B**; *see also* Zentner's LinkedIn Profile (the "Zentner LinkedIn Resume") attached hereto as **Exhibit C** (listing Zentner as a principal of Allerand Capital, LLC since January 2012); Allerand Capital LLC website (the "Allerand Website") attached hereto as **Exhibit D** (listing the SWZ Loan in its past deals, listing Zentner as a principal of Allerand Capital, and describing a relationship between SWZ and Prism Venture Partners.[4] *Compare* Exh. M to SWZ MOL (Zentner Aff.) at ¶ 3, 30 (stating that Sabella and Zentner were unrelated and have no relationship of any kind, direct or indirect

---

[2] The loans and investments made in the beginning of 2012 totaled approximately $225,000 and were repaid in full by the end of 2012, including Zentner's investment. *See* Ex. K to SWZ MOL (Zentner Dep. Tr.) 32:8-15.

[3] Through discovery, the Trustee received a few emails where Zenter's signature block was preceded by Allerand Capital's logo and with "Allerand Specialty Finance" listed after his name. In addition, under the logo, Zentner had an email address of gzentner@allerand.com.

[4] As described in *Kassover v. Prism Venture Partners, LLC*, 53 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2008), Prism Venture Partners' principal owner was Richard Sabella.

in UTG, Tax Help or Allerand). Certain of the Defendants, including SWZ and Tax Help, carefully elected not to disclose the scope of their connections to the Trustee and to the Court. *See* Exh. M to SWZ MOL (Zentner Aff.); Exh. E to SWZ MOL (Sabella Aff.); Ex. Z to SWZ MOL (341 Transcript) 24:18- 25:3.

Zentner, the day-to-day manager of SWZ, was involved with the Debtor. In fact, as set forth above, his company was receiving money from the Debtor in February and March of 2012 and he was a principal of Allerand Capital, LLC, an affiliate of defendant Allerand, LLC (the 99.90 percent profit owner of the Debtor and the management company of the Debtor). *See* Exh. Z to SWZ MOL (341 Transcript) 45:1-25. In sum, Zentner's companies (and Zentner himself) have been intimately involved with the Debtor *prior* to the SWZ Loan, and he has lied about such involvement. *See* Exh. A to Trustee's MOL (March 2012 UTG Trust Account 2 Statement); *compare* Exh. K to SWZ MOL (Zentner Dep. Tr.) 29:18 -32:15 *with* Exh. M to SWZ MOL (Zentner Aff.) at ¶ 3, 30 (stating that Zentner had no interest in Debtor other than his indirect ownership of/participation in part of SWZ Loan).

On February 11, 2013, months after the sham SWZ Loan was consummated, Wonders filed a sexual harassment suit in the United States District Court for the Southern District of Florida.[5] On November 14, 2013, the jury returned a verdict in favor of Wonders and against the Debtor for a total of $70,000. On November 18, 2013, the United States District Court for the Southern District Court of Florida entered final judgment consistent

---

[5] The litigation was brought in the Federal District Court for the Southern District of Florida (*Wonders v. United Tax Group, LLC,* Case No.:13-80148-CV- Middlebrooks).

with the jury verdict (the "Wonders Judgment"). [6]   Notably, on November 4, 2013, just days before the jury returned a verdict in favor of Wonders, SWZ declared the Debtor in default and issued a default notice to the Debtor.  *See* Exh. J to SWZ MOL (default notice). The same law firm used by SWZ to write the default notice and represent SWZ in the Foreclosure Action (defined *infra*), Greenspoon Marder Law, had recently been paid by the Debtor.  A true and correct copy of the PNC Bank 2012 Transaction Ledger is attached hereto and incorporated herein as **Exhibit E.**

At the time the Wonders Judgment was rendered against the Debtor, it was operating and current on all payments to SWZ.  On or about November 19, 2013 – one day after the Wonders Judgment was entered -- SWZ initiated a sham civil action (the "Foreclosure Action") against the Debtor in the Circuit Civil Court in and for Palm Beach County, Florida alleging that the Debtor had defaulted under the credit agreement governing the SWZ Loan.  Sabella was on both sides of this sham litigation, a fact that was not disclosed to the Florida Court.  Four days later, on November 23, 2013, SWZ and the Debtor *settled* the Foreclosure Action because it was the most "reasonable way to minimize the loss."  *See* Exh. E to SWZ MOL (Sabella Aff.) at ¶ 30.  In short, less than two weeks after the Wonders Judgment was entered, the Foreclosure Action was *commenced and settled* and the Debtor's remaining value was transferred (the "Foreclosed/Transferred Assets") to SWZ.

Approximately two-and-a-half (2½) months after the settlement of the Foreclosure Action, the Debtor decided to file bankruptcy because Wonders was "relentless" in attempting to collect on the Wonders Judgment.  A true and correct copy of email

---

[6] The Wonders Judgment was later amended/increased to $191,798.53 after attorney fees/expenses and costs were added to the judgment.

correspondence from Michael Moccia[7] to Adam Hiller dated February 26, 2014 is attached hereto as **Exhibit F**.

### A.    The Mail

Most of the Defendants' alleged causes of action evolve from disputed facts involving the Debtor's mail and the Trustee's conduct in connection with the mail. Ironically, the Defendants are not as quick to discuss the relevant details surrounding the SWZ Loan, the parties, and the interplay between them all.

First, on March 25, 2014, eleven (11) days after the Trustee went to the Debtor's former facility and allegedly "threatened" Sabella, Sabella sent an email to the Trustee (the "Sabella Mail Email") informing him that he received a large amount of mail on March 24, 2014 with a notation that the mail could not be forwarded.  In the Sabella Mail Email, Sabella stated that "I thought I should let you know about this in case you would like us to send it [the mail] all to you (it will fill a large box I believe) and also so that you can take whatever measures might be necessary to correct any instructions to the Post Office in respect to future deliveries."[8]  A true and correct copy of the Sabella Mail Email is attached hereto as **Exhibit G.**

In more than one instance, Sabella's affidavits and deposition testimony reciting his version of the events concerning the mail are in direct contradiction with the Sabella Mail Email, in which Sabella contacted the Trustee and requested an address for the turnover of the mail.  *See* Exh. E to SWZ MOL (Sabella Aff.) at ¶ 38 (Sabella states "[h]e

---

[7] This is the same attorney who had previously represented the Debtor in the sham foreclosure and filed a complaint in Florida against Miller Coffey Tate LLP, the accounting firm in which the Trustee is a partner.

[8] In fact, due in large part to the Sabella Mail E-Mail, the Trustee had caused to be sent another mail forwarding request to the United States Post Office on April 1, 2014.

even invented a preposterous new narrative that I "volunteered" sending the mail to him…"); *see also* Exh. H to Trustee's MOL (Sabella 4/19/16 Dep. Tr. (the "Sabella April 2016 Deposition") 40-19:41-9) (Sabella testified that the Trustee insisted that Sabella forward the mail to the Trustee and that it was up to Gary Zentner -- not Sabella -- to protest the mail transfer if he chose to, since Zentner controlled SWZ); *see also* **Exhibit I** to Trustee's MOL (Sabella 6/20/16 Dep. Tr. (the "Sabella June 2016 Deposition") 8:2-2:15) (Sabella testified that the Trustee demanded the mail and his office complied with the request, but protested the mail being sent). This continuous changing of sworn testimony is perjurious and sanctionable and warrants denial of these Motions.

As noted previously, Sabella testified that Zentner was the manager and the one "in control" of SWZ. In the Sabella April 2016 Deposition, Sabella testified that he was not acting for either the Debtor or SWZ since the transaction had been concluded and, therefore, it was not up to Sabella to protest the mail -- it was up to Zentner to protest. *See* **Exh. H** to Trustee's MOL at 40-19:41-9 (Sabella April 2016 Deposition). When deposed, Zentner testified that he never contacted the Trustee or Tax Help about the mail or the return thereof. In fact, Zentner testified that he was not aware that there was any problem with the mail until Sabella told him. *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 58:17 - 59:5; 51:21 – 52:4 (Zentner testified that he did nothing to get the mail back or collect on the customer accounts). Zentner further testified that, as early as December 2013/January 2014, SWZ was surprised by the level of collections on customer accounts. *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 49:2 -51:1. Zentner further testified that Mr. Drouin expressed to him [Zentner] that not having the mail was impeding his ability to collect on

the receivables.  *See id.*   Unfortunately, Zentner's statement about the drop in collections due to the mail was made two months *before* the chapter 7 was even filed.

On May 23, 2016, approximately a year after the above-captioned adversary proceeding was initiated and more than two (2) years after the Debtor's bankruptcy filing, the Trustee's counsel was informed by defense counsel via e-mail (the "Crawford Email") that "dozens of boxes of documents located at the office space formerly rented by the Debtor" appeared.  A true and correct copy of the Crawford Email is attached hereto as **Exhibit J.**  On June 8, 2016, the Trustee went to the Debtor's former facility to pick up the Debtor's records.  *See* **Exh. K** to Trustee's MOL (Miller Aff.).  The "dozens of boxes" turned out to be one hundred sixty-one (161) boxes, of which eight (8) boxes were filled with correspondence from the Internal Revenue Service (the "IRS") addressed to the Debtor.   When the Trustee was boxing the documents to ship back, the Trustee examined approximately ten (10) letters from the eight (8) boxes of IRS correspondence.  *See* Exh. K to Trustee's MOL (Miller Aff.).  Each of the letters examined by the Trustee were (i) dated November 23, 2013 or thereafter and (ii) contained responses from the IRS on customer (taxpayer) accounts which were active at the time of the foreclosure settlement of which only 150 customers allegedly were taken by SWZ.  *See* Exh. K to Trustee's MOL (Miller Aff.).  These are the same *missing* correspondences that Zentner testified "impeded their ability to collect" on the receivables that Drouin declared caused "enormous amount of difficulty that we experienced in handling complaints and attempting to recreate documents and correspondence that were withheld when the Trustee refused to provide Tax Help with the mail[,]" and that Sabella insisted caused a reduction of "at least" $115,000 in the value realized by SWZ from the collateral.  *See* Exh. K to SWZ MOL

10

(Zentner Dep. Tr.) 49:2 -51:1; *See* Exh. U to SWZ MOL (Drouin Aff.) at ¶ 9; Exh. E to SWZ MOL (Sabella Aff.) at ¶ 52.  Clearly, SWZ, Zentner, Drouin and Sabella lied about the mail, their conduct concerning the mail and its alleged effect on their business.

### B.        The Managing Member of SWZ Was An Insider.

As set forth in detail above, SWZ was not an arms-length lender to the Debtor, as it was connected to the Debtor and the Debtor's managing member.  Zentner was related to the Debtor through Sabella's companies, Allerand Specialty Finance and Allerand Capital, LLC, and was receiving *payments from the Debtor prior* to the SWZ Loan.  *See, e.g.,* Exh. B to Trustee's MOL (Zentner Emails); Exh. C to Trustee's MOL (Zentner LinkedIn Resume); and Exh. D to Trustee's MOL (Allerand Website).  As discussed under Zentner's profile in the Allerand Website, in 2009 Zentner became involved with Prism Venture Partners, LLC, a limited liability company formed by Sabella and J. Peter Paganelli in 2001.  Zentner and Sabella were initimately involved in business since 2009.  Zentner testified that his company, GZ Investco, LLC, invested money in the Debtor.  *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 29:18-30:4.   Moreover, Zentner was affiliated/working for Allerand Specialty Finance, an affiliate of Allerand and the company seeking financing for the Debtor.  Additionally, Zentner was a partner with Sabella in Prism Venture Partners, LLC.  None of this was disclosed by any of the individuals.  Zentner testified that he has "no interest of any kind, direct or indirect, in UTG, Tax Help, or Allerand."  *See* Exh. M to SWZ MOL (Zentner Aff.) at ¶ 3.  We know that is not the case as his company invested money into the Debtor prior to the SWZ Loan and he worked for an affiliate of Allerand.  *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 29:18-25:15.  The Trustee is losing count of the lies of Zentner and Sabella.

11

Moreover, Dean Drouin, the majority owner and control person of Tax Help, was intimately familiar with the Debtor as well. In 2009, Dean Drouin, Allerand and ECW Investco, LLC (which is Ward Welke's LLC) formed the Debtor. *See* Exh. U to SWZ MOL (Dean Drouin Aff.) at ¶ 2; *see also* Exh. C to SWZ MOL (Second Amended LLC Agreement) (recitals). In furtherance of the fraudulent scheme, Dean Drouin left the Debtor in June 2012, after the fraudulent loan was made by SWZ to the Debtor and after Wonders quit her job. *See* Exh. U to SWZ MOL (Dean Drouin Aff.) at ¶ 2. Before Tax Help was even employed by SWZ to collect on the receivables, Tax Help received over $15,000 in unexplained payments from the Debtor's PNC Bank checking account. *See* Exh. E to Trustee's MOL (PNC Bank 2012 Transaction Ledger). Also, KD Consulting Group, LLC (a company owned by Dean Drouin) received payments totaling $112,700[9] in 2012. *See* Exh. E to Trustee's MOL (PNC Bank 2012 Transaction Ledger); *see also* **Exh. L** to Trustee's MOL (KD Consulting Group, LLC Search); Exh. L to SWZ MOL (Welke Dep. Tr.) 9:18-22.

After the SWZ Loan was made, the investors (some if not all) of the Debtor started receiving regular cash payments. In the calendar year 2012, Allerand received $350,000 from the Debtor; KD Consulting Group (Dean Drouin's company) received $97,750[10]; Tax Help (Dean Drouin's company which was not even formed until June 2012) received $15,458; GZ Investco, LLC, Zenter's company, received $97,500.00; and Caroline Welke

---

[9] The payments were as follows:

| | |
|---|---|
| 4/26/12 | $7,350 |
| 6/27/12 | $30,000 |
| 8/1/12 | $25,000 |
| 9/4/12 | $15,000 |
| 11/1/12 | $15,000 |
| 12/4/12 | $5,400 |

[10] Dean Drouin also received $2,000 from the UTG Trust Account 2.

(Ward Welke's wife or daughter) received $32,500.  In 2012, the Debtor paid insiders of the Company $593,208.00.   This amount well exceeds the alleged SWZ Loan.

The Motions and Memoranda are nothing more than another desperate move by the Defendants to bury this Court with more pleadings.  Discovery is not complete, and the Defendants have failed to turn over all relevant documents despite this Court's direction at the July discovery hearings.  The Defendants rely on *disputed* facts[11] and self-serving affidavits in support of their assertions that summary judgment is appropriate.  As set forth below, summary judgment is only appropriate when there exists *no genuine issue of material* fact.  The version of facts that the Defendants rely upon to suggest that summary judgment is appropriate is enough to deny the Motions as the facts relied upon by Defendants are all disputed.  There are genuine issues of material fact that exist.  The Defendants' burden cannot be met, and the Motions should be denied in their entirety.

## III.    **ARGUMENT**

### A.    **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Fed R. Bank. P. 7056.

The moving party bears the burden of establishing the absence of a genuine dispute to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   When the

---

[11] A statement of undisputed facts is attached hereto as **Exhibit M**.

13

nonmoving party bears the burden of persuasion at trial, the moving party "'may meet its burden . . . by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Foulk v. Donjon Marine Co., Inc.,* 144 F.3d 252, 258 n.5 (3d Cir. 1998) (quoting *Wetzel v. Tucker,* 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Substantive law will determine which facts are material and only disputes over facts that might affect the outcome of the suit will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id; see also Delta Mills, Inc. v. GMAC Comm. Fin., LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 105 (Bankr. D. Del. 2009) (An issue is genuine "when reasonable minds could disagree on the result."). The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255 ("the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

For the reasons more particularly set forth herein, the Motions should be denied in their entirety, as there are genuine issues of material fact which remain to be resolved.

**B.     SWZ Is Not Entitled To Summary Judgment Under Counts I and II of the Complaint.**

SWZ attempts to argue that it is entitled to summary judgment under Counts I and II of the Complaint because (i) insolvency was not alleged; (ii) the Trustee failed to allege that SWZ received more than it should have under section 547; (iii) SWZ is entitled to the affirmative defense of ordinary course of business; (iv) SWZ was a mere conduit for the loan participants; and (v) the closing fees were not paid on account of an antecedent debt.

14

SWZ's arguments fail for several reasons.  The Trustee will address each one of these allegations separately.

### 1.      The Debtor Was Insolvent Beginning in 2012.

An entity is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation …." 11 U.S.C. § 101(32)(A); *see Joseph v. Frank (In re Troll Communs., LLC)*, 385 B.R. 110, 122-24 (Bankr. D. Del. 2008) (discussing pleading standard).

SWZ correctly indicates that the Trustee initially pled that the Debtor's 2012 tax return – covering the tax year in which the SWZ Loan was made (April 2012) – suggested that the Debtor was insolvent on a "balance sheet" basis at the beginning and end of calendar year 2012.  *See* Exh. N to Trustee's MOL (Complaint) at ¶ 35.

Simply put, given that insolvency is a defined term under the Bankruptcy Code and Florida's fraudulent conveyance statutes, courts have accepted "bare-bones," conclusory pleadings with respect to the "insolvency" element of preference and fraudulent conveyance actions.  See *In re Petters Co.*, 495 B.R. 887, 923 (Bankr. D. Minn. 2013) ("[u]nder the governing law, [the fact that the term "insolvency" is defined by statute] puts the essence of the Trustee's factual contentions on insolvency right up the flagpole; there was no need to make dollar-specific averments of fact going to the status of the relevant Debtor's balance sheet."); *Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*, 371 B.R. 589, 536-37 (Bankr. D.N.H. 2007) (bare-bones allegation of insolvency in complaint sufficient to satisfy pleading requirement, regardless of whether heightened pleading standard under Federal Rule of Civil Procedure 9(b) (as opposed to F.R.C.P. 8(a)) applies).

15

The Trustee has gone beyond reciting the statutory elements here; as SWZ concedes, the Trustee cited to the Debtor's tax return as supporting his case that the Debtor was insolvent on a balance sheet basis prior to and after the SWZ Loan was made in 2012. Here, the burden is on SWZ to come forward with verified affidavits which establish that there are no genuine issues of material fact with regard to the issue of insolvency. Simply put, the relevant section of the SWZ MOL does not cite to any of the supporting affidavits on this point, nor does SWZ provide any evidence that UTG was solvent at the time of the transfer. The record developed during discovery supports the contention that the Trustee's averment regarding the Debtor's insolvency during 2012 is correct. For example, various financial statements produced by SWZ for periods in 2012/early 2013 show negative members' equity, with the amount of liabilities exceeding the amount of assets (i) at the time the loan was made (*see* Ex. A to SWZ MOL (Jan. 2012 – Mar. 2012 balance sheet) (SWZ 126)) and (ii) more than six (6) months after the SWZ loan was made (*see* Exh. O to Trustee MOL (Nov. 2012 balance sheet) (Allerand 126)).

In sum, insolvency is sufficiently proven in Counts II and III, and SWZ's motion for summary judgment should be denied.

### 2. SWZ Received More Than It Would Have Under A Hypothetical Liquidation.

A preference claim under chapter 5 of the Bankruptcy Code has distinct elements which are identified in 11 U.S.C. § 547(b). SWZ contends that summary judgment is appropriate because there is no genuine issue of material fact as to whether SWZ received more than it would have received if the case was a chapter 7 case and the transfer had not been made. There are two sets of "transfers" at issue in the Foreclosure Action: (i) the payments on the SWZ Loan and, separately, (ii) the transfer of the Foreclosed/Transferred

16

Assets. Under either set of "transfers," SWZ received more than it would have received as it was a party to a sham loan transaction.

The Defendants -- or at the very least, SWZ, Sabella and Allerand -- committed a fraud on the Florida Court and failed to disclose their relationship with the Debtor to the Florida Court in the Foreclosure Action.  SWZ argues that it could never receive more than it would have in a liquidation because it was a secured creditor and SWZ and/or Tax Help acted reasonably after the transfer of the Foreclosed/Transferred Assets.  That argument in and of itself is ridiculous, as SWZ was a party to a sham loan transaction and was attempting to strip any value from the Debtor.  The insiders allegedly put $501,000 into the Debtor, yet they took out over $593,000 and encumbered all assets.

Moreover, even if it wasn't part of the sham loan transaction, post-transfer conduct by the recipient of a preferential transfer does not provide a defense to an action under section 547 of the Bankruptcy Code. Accordingly, to the extent that SWZ is suggesting that summary judgment should be granted because it believes it was a good steward of the Foreclosed/Transferred Assets post-transfer, that claim is baseless and against case law. SWZ itself cites no authority in support of such a proposition.  *See* SWZ MOL at pgs.19, 20.

Second, SWZ argues that the transfer of the Foreclosed/Transferred Assets could not exceed the value given to the Debtor in the Settlement Agreement. *See* 11 U.S.C. § 547(b)(5); *see also* SWZ MOL. at pg. 19 ("The transfer of the Foreclosed/Transferred Assets could not be an avoidable preference unless, *inter alia*, the value of the property received by SWZ exceeded the value provided to the Debtor in the Settlement Agreement").   SWZ took all of the assets of the Debtor- the accounts, the cash, the

customer lists, the contracts, the goodwill, the enterprise value and the business records. As alleged by the Trustee in the Complaint, the value of the company which was stolen by SWZ is $3,000,000.  *See* Exh. N to Trustee's MOL (Complaint).  Thus, the value of that collateral was more than $85,000 (the amount that Tax Help achieved in the liquidation) or the $343,979.80 (the amount alleged to be due and owing under the Stipulation of Settlement).  SWZ received over $3,000,000 worth of value.  The Debtor's own documents suggest that SWZ is undervaluing the Debtor's assets on a liquidation basis.  In the Complaint, the Trustee's averments regarding the liquidation value of the receivables are based upon the Debtor's internal documents.  *See* Exh. N to Trustee's MOL (Complaint) at ¶ 22-24.  Those internal documents assign a value to the Debtor's current receivables alone (meaning, those due within thirty (30) days or less) of $414,038.00.  Moreover, during discovery, the Trustee received a document from counsel for the Debtor that valued the receivables (meaning, those due within thirty (30) days or less) as of October 31, 2013 at $581,348 (the "Receivables Value").  A true and correct copy of the document listing the Receivables Value is attached hereto and incorporated herein as **Exhibit R.**

Under any scenario, SWZ received more than it would have received if the transfers (the Transfers and the Foreclosed/Transferred Assets) had not been made.  The Motions must be denied, as there are genuine issues of material fact.

### 3.      Ordinary Course of Business Defense Does Not Exist.

Ordinary course of business is an affirmative defense and therefore SWZ bears the burden of demonstrating at trial that one or more of the transfers at issue are subject to the "ordinary course of business" defense.  Clearly, nothing is ordinary about a sham loan

18

transaction. In fact, case law is clear that ordinary course of business defense is not applicable to fraudulent transactions/ Ponzi schemes.

A debt cannot be incurred in the ordinary course of business where the debtor engaged in fraudulent conduct. *Computer World Solution, Inc. v. Apple Fund, L.P.* (*In re Computer World Solution, Inc.*), 427 B.R. 680, 689-90 (Bankr. N.D. Ill. 2010); *see also Jobin v. McKay (In re M & L Bus. Mach. Co.*), 84 F.3d 1330, 1339-40 (10th Cir. 1996) ("determining that the ordinary course of business defense is not applicable to payments by a fake business set up to defraud people"); *Henderson v. Buchanan*, 985 F.2d 1021, 1025 (9th Cir. 1993) ("concluding that the ordinary course of business defense is not applicable to Ponzi scheme investors because a Ponzi scheme is not a business"). Putting that not-so small fact aside, nothing in the SWZ MOL or the supporting affidavit(s) establishes that SWZ could claim that the transfers were objectively "made according to ordinary business terms."

Even if this Court found that the SWZ Loan was not a sham, SWZ still would not be able to assert an ordinary course of business defense because SWZ, an insider to the Debtor, made the SWZ Loan. Courts have recognized that inherent with insider loans is an informational advantage which the non-insider creditor does not have which makes the transfers anything but ordinary. *See In re Prevalence Health, LLC*, No. 1100068EE, 2012 Bankr. LEXIS 5255, at *28-29 (Bankr. S.D. Miss. Nov. 7, 2012) ("[T]he Court finds that the circumstances under which the payment was made, a small corporation making payments to an insider, did give rise to unusual collection efforts and payment practices."). SWZ is an "insider" of the Debtor. As detailed above, Sabella, Allerand and SWZ have a multitude of connections and relationships among and between them in relation to the

19

Debtor.  Further, Sabella and Welke personally guaranteed the Debtor's obligation to repay the SWZ Loan.  *See* Exh. A to SWZ MOL (Sabella/Welke payment guaranty) (SWZ 53 – SWZ 62).

As such, summary judgment is not appropriate considering the circumstances under which the SWZ Loan was made and, by extension, the loan repayment-related transfers from the Debtor to SWZ.  The SWZ Loan was part of a scheme designed to ensure that the Debtor's insiders retained control of the business if the Debtor suffered an adverse result (e.g., if Wonders successfully prosecuted her sexual harassment claim).  There is nothing "ordinary" about the scheme.  As such, SWZ cannot avail itself of a defense accorded to an arms-length debtor-creditor relationship and, therefore, summary judgment should be denied.

### 4.    SWZ Was Not A Mere Conduit.

A bank collecting on a loan is not a mere conduit to its shareholders.  SWZ falls considerably short of establishing that, with regard to the transfers it received from the Debtor, it was serving as a "mere conduit" for certain loan participants.  Rather, the participation agreements themselves are probative evidence that SWZ had complete dominion and control over transfers received from the Debtor. *See* Exh. A to SWZ MOL (participation agreements) (SWZ 33-SWZ 52).

This Court, and other courts within this Circuit, have recognized that an entity which serves as a "mere conduit" for an avoidable transfer is not liable as an "initial transferee" of same under 11 U.S.C. § 550.  To determine whether an entity is a "mere conduit," this Court has employed the "dominion and control" test with respect to the transfers received.  If the entity was free to do what it pleased with the transfers, it was not

20

a "mere conduit;" if the entity lacked dominion and control over the funds due to, for example, a relationship with a third party, it was a "mere conduit" entitled to avail itself of the defense. *See Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 104 (Bankr. D. Del. 2006) ("Where a transferee is 'not under any contractual or other obligation to use [transferred funds] for the benefit of [third parties,]' but rather, may use the funds freely, it is not a 'mere conduit.'").

Insofar as principal and interest payments are concerned, the critical issue with respect to SWZ's asserted "mere conduit" defense is the following:  did SWZ lack dominion or control over the funds received from the Debtor?  *See Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.)*, 321 B.R. 388, 395-96 (Bankr. D. Del. 2005) (internal citation(s) omitted).  While the Trustee believes that this Court will ultimately find that the answer to that question is "no," (specifically, that SWZ had total dominion or control over the funds), all this Court has to find on summary judgment is a question of fact which warrants a hearing on SWZ's asserted defense.  Ironically, the loan participation itself – the document which SWZ relies upon – creates that inference.

Each loan participation agreement only created an obligation for SWZ to make payments to the loan participants based on the timing of the receipt of funds from the Debtor.  Under the loan participation agreement, there is no express provision requiring SWZ to hold monies received from the Debtor in trust; SWZ was not obligated under the loan participation agreement to deposit the funds at issue in an identified bank account for the participants' benefit, nor was SWZ obligated to "pass through" the funds received from the Debtor to the participants.  SWZ's principal(s) could have taken a principal/interest payment from the Debtor and gambled the payment away in a casino without violating the

21

loan participation agreement.  *See Argus Mgmt. Grp. v. Gab Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 216 (Bankr. D. Del. 2005) ("To have dominion and control means to be capable of using the funds for 'whatever purpose he or she wishes, be it to invest in lottery tickets or uranium stocks.'") (internal citation(s) omitted).  Per the agreement, three days after receipt of a transfer from the Debtor, SWZ had a contractual obligation to pay each participant an amount equal to its share of the transfer received based upon the participants' percentage stake in the loan, net of certain advances, expenses and/or other items paid on its behalf.  SWZ was free to satisfy its contractual obligations to the loan participants with funds received from the Debtor and/or funds received from another source.

With respect to the Foreclosed/Transferred Assets, the loan participation agreements do not specify any obligations to the loan participants.  In fact, the servicing provision which authorizes SWZ to service the SWZ Loan "as though it were the sole owner and holder thereof" appears to be the only provision governing the handling of the Foreclosed/Transferred Assets post-foreclosure.  *See* Exh. A to SWZ MOL (Participation Agreements) at ¶ 7(a) (SWZ 33-52).  Further, there appears to be no provisions in the loan participation agreements requiring that net liquidation proceeds be held in trust, deposited in an identified bank account, and/or distributed to loan participants within a specific timeframe.  Finally, paragraph 11(b) of the agreement establishes that SWZ has a liquidation preference in the amount of any advances it makes, in its sole discretion, on behalf of the other loan participants.  It is axiomatic that reimbursement of advances made on behalf of third parties is not a "pass through" which enables a party to avail itself of the "mere conduit" defense.  Further, SWZ failed to provide any evidence that SWZ complied

with the participation agreements as written.  This burden rests on SWZ, and the record is devoid of facts on this point.

Moreover, unlike the facts in the only authority cited by the Defendants that is specific to the loan participation context – the *Brooke Corp.* case, from the District of Kansas – the loan participants are not before this Court.  *See Northern Capital, Inc. v. Stockton Nat'l Bank  (In re Brooke Corp)*, 458 B.R. 579, 591 (Bankr. D. Kan 2011) ("The Participants are already parties to this litigation, and requiring the Trustee to recover from them rather than Stockton will not impose an administrative burden.").  When SWZ sued the Debtor in the Foreclosure Action, it did so in its own name and represented itself to be the owner and holder of the loan documents.  *See* Exh. N to SWZ MOL (foreclosure settlement stipulation) (Schedule A (foreclosure complaint), ¶ 13 (SWZ 181).  There are no representations in the Foreclosure Action that (i) SWZ only owned a fraction of the loan – meaning, there were loan participants not before the court and/or (ii) SWZ was suing in its capacity as an administrative agent for other lenders.  Accordingly, in the event that this Court determines that SWZ was acting as a mere conduit, the Trustee should be granted leave to add the remaining loan participants as defendants in substitution for SWZ.

Lastly, the SWZ Loan was a sham to extract cash from the Debtor to the detriment of the Debtor's creditors.  SWZ was not a mere conduit, but was a knowing participant in the scheme.  Accordingly, summary judgment must be denied.

### 5.      Closing Fees Were Transferred On Account Of Antecedent Debt.

With respect to SWZ's argument that the closing fees associated with the SWZ Loan (in the amount of $19,855.00) were not transferred on account of an antecedent debt, SWZ cites to the Debtor's April 2012 monthly bank statement for the PNC Bank Account

23

and alleges that the funds were "never actually transferred to the Debtor." *See* SWZ MOL at pg. 19.  Two points are relevant here.  First, with respect to the "antecedent debt" point, there had to have been an agreement to pay the fees – oral or written – which arose prior to the parties' arrival at the closing table.  Second, SWZ's suggestion that there is no "transfer" for section 547(b) purposes if the Debtor does not actually effectuate the wire (or write a check) is contradicted by the plain language of the statute, which simply provides that the transfer to be avoided has to be "an interest of the debtor in property." There is no dispute that the fees increased the Debtor's liability under the SWZ Loan – accordingly, the Debtor's interest in the loan proceeds was transferred, and the statute is satisfied.   Accordingly, there are genuine issues of material fact which remain to be resolved; summary judgment is not appropriate.

**C.**    **SWZ Is Not Entitled to Summary Judgment on Count III, as the Trustee Has Proven That the Foreclosed/Transferred Assets Were Preferential Under 11 U.S.C. § 547(b).**

SWZ argues that it is entitled to summary judgment on Count III of the Complaint because 1) a transfer in lieu of a foreclosure is not a preference, 2) there is no reasonable possibility that the collateral exceeded the debt, 3) the Trustee's conduct caused the damages, 4) the Trustee's supervening acts rendered the damage calculations speculative, 5) SWZ did not receive more than it would have in a liquidation, and 6) SWZ is a mere conduit.  *See* SWZ MOL at pg. 19-28. The Trustee will address each argument separately.

**1.**    **Transfer in Lieu of Foreclosure Is A Preference.**

SWZ raises the section 547(b)(5) argument anew here; SWZ incorrectly argues that, because the amount realized from the post-transfer servicing of the Debtor customer accounts was only $85,760.60 of net cash proceeds, an amount less than the approximately

24

$250,000.00 allegedly due to SWZ on November 26, 2013 (the date on which the foreclosure settlement closed) that there is no preference. The Complaint itself alleges that SWZ received value of over $3,000,000 on account of the Foreclosed/Transferred Assets. The Trustee analyzed and rejected SWZ's argument(s) regarding section 547(b)(5) at an earlier point in this brief and incorporates that response in full here. SWZ has failed to provide any credible evidence that would prove its baseless allegations. As such, summary judgment is not appropriate and should be denied.

**2.      The Value of the Collateral Exceeded The Amount Owed To SWZ on the Date of the Transfer.**

SWZ again claims that it is entitled to summary judgment based upon its mistaken belief that, on November 26, 2013, the value of the Foreclosed/Transferred Assets was less than $365,000. The Trustee, however, valued the Foreclosed/Transferred Assets at $3,000,000. First, the Trustee analyzed and rejected SWZ's argument(s) regarding section 547(b)(5) at an earlier point in this brief; the Trustee incorporates that response in full here. Second, SWZ's argument falls short, as the SWZ Loan was a sham. Moreover, SWZ's argument relies on facts - all of which are disputed - relating to the value of the collateral on the date the Foreclosed/Transferred Assets were transferred to SWZ. According to SWZ's own calculations, the Foreclosed/Transferred Assets were worth more than the amount due under the sham SWZ Loan. As of October 31, 2013, the Debtor, in which Sabella acted as manager on behalf of Allerand, itself, had assigned a Receivables Value of $581,348 for those receivables due within thirty (30) days or less. *See* Exh. R to Trustee's MOL. As such, the value of the Foreclosed/Transferred Assets is well in excess of any value received by the Debtor, and summary judgment should be denied.

### 3.   Estoppel Argument Against Trustee Is Meritless.

Defendants assert that they are entitled to summary judgment on an unclean hands defense on two separate grounds: first, the Trustee's assertion of damages in the complaint; second, the Trustee's alleged interference with SWZ and Tax Help to service their client accounts post-petition. Both assertions are meritless, but this Court need not reach that conclusion in the context of the Motions. Rather, the issue before this Court is whether there is no genuine issue of material fact that needs to be tried. As set forth below and throughout, there are genuine issues of material facts relevant to the Defendants' unclean hands defense and, as such, summary judgment is not appropriate as a matter of law.

"To prevail on an 'unclean hands' defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff." *Sonowo v. U.S.*, 2006 U.S. Dist. LEXIS 83146, 2006 WL 3313799, *3 (D.Del. Nov. 13, 2006); *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 n. 7 (3d Cir. 1992)). The United States Court of Appeals for the Third Circuit has recognized that "the primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters before the court for resolution." *New Valley Corp. v. Corporate Prop. Assocs. 2 and 3 (In re New Valley Corp.)*, 181 F.3d 517, 525 (3d Cir. 1999). "As an equitable doctrine, application of unclean hands rests within the sound discretion of the trial court." *Id*; *see United States v. State St. Bank & Tr. Co.,* 520 B.R. 29, 69 (Bankr. D. Del. 2014).

As this court has explained, the equitable doctrine of unclean hands is not "a matter of 'defense' to the defendant." *Gaudiosi v. Mellon*, 269 F.2d 873, 882 (3d Cir.), *cert. denied*, 361 U.S. 902 (1959). Rather, in applying it "courts are concerned primarily with

their own integrity," *id.*, and with avoiding becoming "'the abettor of iniquity.'" *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir.), *cert. denied*, 407 U.S. 934 (1972) (citations omitted). Thus, the doctrine is to be applied "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245-46, 78 L. Ed. 293, 54 S. Ct. 146 (1933).

First, with respect to the damages demand, as it does throughout most of their memoranda, the Defendants are content with making arguments without providing any factual and/or legal support for same. The Trustee has sufficiently detailed the known grounds supporting his damages claim with respect to the Foreclosed/Transferred Assets above, with the understanding that discovery has yet to conclude. Upon the conclusion of that discovery, the Trustee or an expert will prepare a formal damage assessment in preparation for trial. While it is clear that the Defendants do not agree with the Trustee's damage claims, SWZ has to do more than mount a baseless assault on the Trustee's good character to obtain summary judgment. Moreover, neither SWZ, Tax Help, Allerand nor Sabella have ever cited to any specific damages as a result of the alleged unclean hands.

The "mail" issue has surfaced in several different contexts in the chapter 7 case. Notwithstanding the fact that SWZ readily admits that it has the burden of proof on the "unclean hands" defense, SWZ fails to explain how there is no genuine dispute regarding material facts on this point. The Trustee took the same actions that he takes in every case that he is assigned to with regards to re-directing mail to his office via instruction to the United States Postal Service, as the manual authored by the United States Trustee Program directs him to do. That fact alone – that the Trustee has relied (and continues to rely) upon

27

Department of Justice-issued guidelines in retrieving the Debtor's mail promptly after the bankruptcy filing and issuing re-direct instructions to the USPS – is sufficient to defeat SWZ's claimed defense in full and, at a minimum, SWZ's summary judgment motion.

If anything, SWZ is acting in bad faith – and unconscionably – by asserting the "unclean hands" defense.  Initially, notwithstanding that it had approximately three (3) months to effectuate a transfer of client mailings to its address, SWZ clearly did not transfer client mailings to its address post-foreclosure.  Further, the Debtor's bankruptcy case was filed by SWZ's representative in the case, Sabella.  As set forth above, Sabella *voluntarily* offered to forward the Debtor's mail – the same mail to which SWZ's precious lien allegedly attached -- to the Trustee some three (3) weeks after the Petition Date.  *See* Exh. G to Trustee's MOL (Sabella Mail Email).  Notwithstanding the alleged vital importance of control and possession of that mail to SWZ's post-closing operations, the Debtor's mail only became sufficiently important for SWZ to complain about *after* the Trustee filed the complaint which initiated the above-captioned lawsuit more than a year after the bankruptcy filing.

It is undisputed that SWZ never once requested the mail in a letter or made any phone call to the Trustee.  *See,* Exh. H to Trustee's MOL (Sabella April 2016 Deposition) at 40:19- 41:9, *see also* Exh. K to SWZ MOL (Zentner Dep. Tr.) 58:17-59:5; 51:21-52:4 (Zentner testified he did nothing to get the mail back).  SWZ took no formal action in this Court to obtain control of the Debtor's mail.  It is also undisputed that it took SWZ approximately two years to muster enough interest in the mail to mention same in a pleading filed with this Court.  Given that SWZ's principal elected to stash several trash bags of the Debtor's mail in a closet in Florida for two years, collecting dust – including

mail related to alleged active client files which the Debtor transferred to SWZ, the same mail which SWZ insists was critically important – the only unclean hands are those of SWZ.

### 4.    There Are No Supervening Acts of Trustee Which Render Damage Calculations Speculative.

Without citing a single authority in support of its argument, SWZ asserts that the mail-related "misconduct" prevents this court from measuring the value of the Foreclosed/Transferred Assets.

All inferences to be drawn from the evidence must be resolved in favor of the Trustee on summary judgment, and any issues which turn on the credibility of witnesses must be resolved in the Trustee's favor (the Trustee being the non-moving party) at this stage.  The issue is whether there is probative evidence to rebut SWZ's claim of mail-related misconduct being the cause of a diminution in value in the customer accounts and summary judgment in SWZ's favor is appropriate.  The answer is that there undoubtedly is.  That probative evidence is detailed in the Trustee's response to the "unclean hands" defense, *supra*.

In sum, there is ample evidence in the record for the factfinder to conclude that the Trustee's handling of the Debtor's mail was required by law and/or at the invitation of Sabella.  Further, the evidence supports a conclusion that Sabella, Allerand, Tax Help and SWZ, by their own acts and omissions, caused damage to the customer accounts transferred from the Debtor to SWZ.   As such, any finger-pointing at the Trustee is nothing more than laughable.  SWZ, Sabella and/or Allerand sat on over 161 boxes of documents, which included over 8 boxes of mail correspondence.   The Defendants' own inaction and/or

29

mishandling of client accounts damaged their clients.  The mail had nothing to do with SWZ's or Tax Help's incompetence.

### 5. SWZ Received More Than It Would Have in Chapter 7 Liquidation.

For the reasons set forth above, the Trustee has established there is probative evidence raising a genuine issue of material fact as to whether SWZ recovered more than it would have received in a chapter 7 case as a creditor with its alleged security interest. The Trustee analyzed and rejected Defendants' argument(s) on this topic at an earlier point in this brief and incorporates that response in full here.

### 6. SWZ Is Not A Mere Conduit.

For the reasons set forth above, the Trustee has established there is probative evidence raising a genuine issue of material fact as to whether SWZ lacked dominion and control over the transfers and, by extension, could avail itself of a "mere conduit" defense. The Trustee incorporates its analysis from the earlier section in this brief and incorporates that response in full here.

### D. The Trustee Has Proven Fraud As Alleged in Counts IV, V, VI and VII (11 U.S.C. § 548(a) and Florida Statutes Title XLI, §§ 726.105(1)(b), 726.106(1) and 726.106(2)).

#### 1. The Transfers Were Constructively Fraudulent Under 11 U.S.C. § 548(a)(1) And, Therefore, Summary Judgment Should Be Denied With Respect To Count IV.

The Complaint alleges that the Two Year Transfers and the Foreclosed/Transferred Assets were constructively fraudulent under 11 U.S.C. § 548(a)(1).  *See* Exh. N to Trustee MOL (Complaint) at ¶ 54-61.  Section 548(a)(1) of the Bankruptcy Code provides, in pertinent part, as follows:

30

(a)(1) The Trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that debtor would incur; debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

### a. The Debtor Did Not Receive Reasonably Equivalent Value.

To determine "whether a debtor received reasonably equivalent value, a court looks to the totality of the circumstances of the transfer, including the following factors: (i) the fair market value of the benefit received as a result of the transfer, (ii) the existence of an arm's length relationship between the debtor and the transferee, and (iii) the transferee's good faith." *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006). Additionally,

reasonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets "roughly the value it gave." *Id. at 213.*

A review of the totality of circumstances in this case makes it clear that the Debtor did not receive reasonably equivalent value from SWZ for the Foreclosed/Transferred Assets and the Two Year Transfers. Accordingly, the transfers are fraudulent pursuant to section 548(a)(1)(B).

SWZ mistakenly relies on the Debtor's receipt of the fraudulent SWZ Loan as the basis for the Debtor receiving reasonably equivalent value for the Two Year Transfers[12] and Foreclosed/Transferred Assets. *See* SWZ MOL at pgs. 28-30. However, as set forth above, SWZ and the Debtor were on both sides of the transaction, and the transfers (the Two Year Transfers and the transfer of the Foreclosed/Transferred Assets) were not the result of arms' length transactions. Case law is clear that payments made on account of antecedent debts to insiders are not made in good faith and, by extension, do not get the benefit of the cited presumption. *See generally Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 248-49 (2d Cir. 1987).

Courts have held corporate insiders to a different standard than general creditors under fraudulent conveyance law. In *S. Indus. v. Jeremias*, 66 A.D.2d 178 (N.Y. Supreme (App. Div., 2nd Dep't) 1978), a shareholder/officer ("insider") loaned his corporation in excess of $ 200,000. The corporation ceased operations and insider, as president of the corporation and pursuant to a resolution, sold all the furniture, fixtures, and machinery to himself in consideration of $ 150,000 of the antecedent debt owed to him by the

---

[12] The Two Year Transfers were mistakenly listed in the Complaint as $289,513.27. The correct amount of the Two Year Transfers are $307,507.27. Under either number, the Trustee disputes that reasonably equivalent value was received by the Debtor.

32

corporation. *Id.* Certain trade creditors argued that the transaction was a fraudulent conveyance and sued respondent for proceeds from the sale. The trial court awarded judgment to the creditors. *Id.* Both parties sought review. *Id.* The appellate court affirmed and held that state fraudulent conveyance law, N.Y. Debt. & Cred. Law § 273, barred the transfer of all the assets of an insolvent corporation to a director when the transfer was made with the intent to gain an unconscionable advantage over another creditor. *Id.*

The *Jeremias* court held that the transfer of substantially all of the assets of an insolvent corporation to a director thereof in return for the satisfaction of an antecedent debt is barred by the fraudulent conveyance provisions of New York's Debtor and Creditor Law, despite an exchange of equivalent value, where the transfer was not made in good faith, as it was consummated with the intent to obtain unconscionable advantage over the rights of other general creditors. *Id.* Moreover, whether it be upon the theory that directors of insolvent corporations are trustees for the benefit of all creditors, or upon the theory that it would be inequitable to allow directors to use inside information and their controlling voice in corporate affairs to benefit themselves over the claims of others, the common law forbids preferences to directors of insolvent corporations as being contrary to principles of fair, honest and open dealing. *Id.* Yet, that is exactly what happened; Sabella received $100,000, right off the top from the SWZ Loan. *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 8:20-10:14. A loan to make equity distributions cannot be reasonably equivalent value. The Debtor paid out close to $600,000 in the calendar year 2012 to equity holders and there was absolutely no value added.

The Trustee has cited to substantial evidence demonstrating that SWZ is an insider. At the time of the SWZ Loan, SWZ, Sabella, Welke and Zentner, were all affiliated with

Allerand, the 99.90 percent profit owner of the Debtor.  Zentner was working for an affiliate of Allerand (Debtor's managing member), Allerand Specialty Finance.    Moreover, Zentner's company had invested in the Debtor and was receiving payments from the Debtor in February/March 2012, prior to the SWZ Loan.  *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 29:18 -30:4; Exh. A to Trustee's MOL (March 2012 UTG Trust Account 2 Statement).

Further, the Trustee has cited to substantial evidence demonstrating that the entire scheme -- the SWZ Loan, the alleged default under the loan documents, and the friendly foreclosure resulting in the transfer of the Foreclosed/Transferred Assets -- was made for the sole purpose to extract equity from the company and hinder Wonders from collecting any amounts on account of the Wonders Judgment.    On April 10, 2012, one day before the SWZ Loan, Allerand received $150,000 from the debtor.  The next day, the date on which the SWZ Loan was funded, Allerand received an additional $100,000.  *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) at 9:4-10:25 (the first $100,000.00 of the SWZ Loan was used to pay equity holders of the Debtor).

Thus, in the calendar year 2012, Allerand received $350,000 from the Debtor; KD Consulting Group (Dean Drouin's company) received $97,750; Tax Help (Dean Drouin's company which was not even formed until June 2012) received $15,458; GZ Investco, LLC, Zentner's company, received $97,500; and Caroline Welke received $32,500.    In 2012, the Debtor paid insiders of the Company $593,208.    It is clear from the facts that the Debtor's actions were part of a scheme devised to strip the Debtor's value away and to hinder the ability of any creditor, including Wonders, from collecting anything from the Debtor.

34

Lastly, the value of the Foreclosed/Transferred Assets was far greater than the value received by the Debtor under the SWZ Loan. The Debtor received no value from the SWZ Loan; it all went to insiders/shareholders of the Debtor. The entire scheme was made with the intent to defraud creditors.[13] A fake loan was made to payoff shareholders or officers of the company to the detriment of everyone else. The Debtor transferred any and all things of value to SWZ to frustrate Wonder's ability to collect anything from the Debtor. SWZ valued the Debtor's Foreclosed/Transferred Assets in excess of $551,000.00. *See* Exh. W of the SWZ MOL (A/R Listing). SWZ mistakenly relies on the amounts allegedly recovered by Tax Help as the true value received. SWZ has not provided any discovery with regards to the value received.

The incompetence and mismanagement of SWZ, Sabella and Allerand caused SWZ to receive less than the true value of the Foreclosed/Transferred Assets. In May 2016, over two years after the bankruptcy case was commenced, Trustee's counsel was informed that "dozens of boxes" were still located at the Debtor's former facility. *See* Exh. K to Trustee's MOL (Miller Aff.). On June 8, 2016, the Trustee went to the Debtor's former facility to pick up the Debtor's records. *See* Exh. K to Trustee's MOL (Miller Aff.). When the Trustee was boxing the documents to ship back, the Trustee examined approximately ten (10) letters from the eight (8) boxes of IRS correspondence. *See* Exh. K to Trustee's MOL (Miller Aff.). Each of the letters examined by the Trustee were (i) dated November 23, 2013 or thereafter; and (ii) contained responses from the IRS on customer (taxpayer) accounts which were active at the time of the foreclosure settlement. *See* Exh. K to Trustee's MOL (Miller Aff.). These is the same *missing* correspondence that Sabella and

---

[13] While the Complaint only alleges constructive fraud, the Trustee intends on filing a motion to amend the Complaint to include actual fraud based upon the information received during discovery.

35

Zentner testified "impeded their ability to collect" on the receivables. *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 49:2 -51:1; *see also* Exh E to SWZ MOL (Sabella Aff.) ¶34-39. Accordingly, the payments made by the Debtor to SWZ on account of the SWZ Loan are invalid, and SWZ is not entitled to summary judgment on this issue.

Accordingly, the Debtor did not receive reasonably equivalent value in exchange for the transfers, and SWZ is not entitled to summary judgment on this issue.

### b.      Estoppel Due to Trustee's Unclean Hands Argument Against Trustee Is Meritless.

SWZ's "unclean hands" defense is analyzed and discussed above and incorporated here by reference. For the same reasons previously stated, SWZ is not entitled to summary judgment on its asserted "unclean hands" defense, as it is meritless.

### 2.      Summary Judgment Should Be Denied With Respect to Count V, As The Transfers Were Fraudulent Under Florida Statutes Title XLI, § 726.105(1)(b).

The Complaint alleges that the Two Year Transfers and the Foreclosed/Transferred Assets were fraudulent under Florida's Uniform Fraudulent Transfer Act, Florida Statutes Title XLI, § 726.105(1)(b), *et seq* ("FUFTA"). *See* Exh. N of Trustee's MOL (Complaint) at ¶ 62-68 (Complaint). Under section 544(b) of the Bankruptcy Code, the Trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." *See* 11 U.S.C. §544(b). Florida Statutes Title XLI, § 726.105(1)(b), titled "Transfers fraudulent as to present and future creditors," provides as follows:

> (1)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

36

(a)    With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1.    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2.    Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Florida Statutes Title XLI, § 726.105(1)(b).

### a.    "Triggering Creditor" Was Averred and Exists.

SWZ alleges that it is entitled to summary judgment of all the FUFTA claims in the Complaint because the Trustee has not identified and pled the existence of at least one actual creditor that meets the requirements of section 544(b)(1) of the Bankruptcy Code. *See* SWZ MOL at pg. 31.  While it is necessary for the Trustee to show at least one creditor in order to bring a cause of action for avoidance of a fraudulent conveyance under FUFTA, SWZ fails to acknowledge that Wonders satisfies that element. Courts have consistently held that, in order to maintain an action under § 544(b)(1) of the Bankruptcy Code, the creditor does not need to have reduced his/her claim to a lien or judgment. *See In re Hecht,* 51 Bankr. 72, 76 (Bankr. D.Vt. 1985).

As set forth in detail above, Wonders' employment with the Debtor began in October 2011.  *See* Exh. P to Trustee's MOL (Wonders Compl.) at ¶ 12.  Wonders ultimately quit her job in May, 2012.  Wonders alleged that "from the onset of her employment," she was subject to continual and repeated sexual harassment by the Debtor's employees and the Debtor's management which gave rise to her claims.  *See* Exh. P to Trustee's MOL (Wonders Compl.), at ¶¶ 13, 18-47.  Accordingly, at the time of each

37

transfer at issue in the Complaint, Wonders was an unsecured creditor holding an allowable unsecured claim under section 502 who could avoid the transfers at issue under applicable (i.e., state) law. *Cf. Carter v. West Publ'g Co.*, 225 F.3d 1258, 1263-64 (11th Cir. 2000) (discussing "continuing violation" doctrine and its intersect with limitations requirements under Title VII); *see also Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013) (discussing continuing violation doctrine and its intersect with limitations requirements under Title VII).  Wonders was entitled to file a proof of claim asserting her Title VII claim(s) at the time each and every transfer was made.

Moreover, the listing on a debtor's schedules of unsecured creditor(s) with the date on which such debt was incurred can prove the existence of a "triggering creditor." *In re Buchanan*, 35 B.R. 842, 846 (Bankr. E.D. Tenn. 1983).  The Debtor's schedules list several unsecured creditors whose claim arose in 2012. *See* Exh. Q to Trustee's MOL (Schedule F).  Any creditor listed on Schedule F whose claim arose in 2012 had an allowable unsecured claim against the Debtor.

Therefore, the Trustee has satisfied section 544(b)'s "triggering creditor" requirement, and summary judgment is not appropriate on any of the FUFTA counts (Counts V, VI, VII and X).

> **b.      Enforcement of a Security Interest Not a Defense for
> <u>Insider Lacking Good Faith.</u>**

Moreover, SWZ incorrectly argues that it has a complete defense to the transfers under FUFTA because the transfer resulted from the enforcement of a security interest in compliance with Article 9.  As set forth above, the entire loan was a sham transaction and therefore is *void ab initio*. Case law makes it clear that, where the transfer at issue is a sham transaction designed to defraud unsecured creditors, no defense is available regardless of

whether the participants have complied with commercial formalities. *See Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 211-15 (3d Cir. 1990) (evidence demonstrated that various transactions culminating in a consensual foreclosure were "in reality a single transaction functioning as a subterfuge"). The Trustee previously discussed at length the evidence showing that the SWZ Loan, the repayment thereof, and the foreclosure settlement between the Debtor and SWZ are fraudulent. As such, SWZ, an insider acting in bad faith, cannot avail itself of a defense on the grounds that the process-based formalities were allegedly observed. Accordingly, no defense exists and summary judgment is inappropriate on the FUFTA counts (Counts V, VI, VII and X).

> **c.      Genuine Issue of Material Fact Exists Regarding Whether the Debtor Received Reasonably Equivalent Value (Two Year Transfers).**

SWZ argues that, "[b]ecause the fair value of the Foreclosed/Transferred Assets did not exceed the value received by the Debtor under the Settlement Agreement (forgiveness of deficiency), such transfer resulted in 'value' to the Debtor because it constituted a transfer in satisfaction of an antecedent debt …." *See* SWZ MOL at pg. 35. These arguments are meritless.

Under §548(a)(1)(B) and Fla. Stat. §726.105(1)(b), the plaintiff must prove that the debtors did not receive 'reasonably equivalent value' in exchange for the transferred property." *Menchise v. Clark (In re Dealers Agency Servs.)*, 380 B.R. 608, 619 (Bankr. M.D. Fla. 2007) (*citing In re Seaway International Transport, Inc.*, 341 B.R. 333, 334 (Bankr. S.D. Fla. 2006)). The statutes do not specifically define the term "reasonably equivalent value." *Id.* In determining the issue, however, courts generally consider many factors, including the "good faith of the parties, the disparity between the fair value of the

39

property and what the debtor actually received, and whether the transaction was at arm's length." *Id. (citing In re Vilsack*, 356 B.R. 546, 2006 WL 3458257, at 6 (Bankr. S.D. Fla. 2006)). The "essential examination is a comparison of 'what went out' with 'what was received.'" *In re Leneve*, 341 B.R. 53, 57 (Bankr. S.D. Fla. 2006) (*citing In re Grabill Corp.*, 121 B.R. 983, 994 (Bankr. N.D. Ill. 1990)). The purpose of avoiding transfers unsupported by "reasonably equivalent value" is to protect creditors against the depletion of a bankrupt's estate. *See 8699 Biscayne, LLC v. Indigo Real Estate LLC (In re 8699 Biscayne, LLC)*, No. 08-01749-AJC, 2012 Bankr. LEXIS 1244 (Bankr. S.D. Fla. Mar. 22, 2012); *Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009). Determining "reasonably equivalent value" is predominantly a factual determination. *See AASI Creditor Liquidating Trust v. Oracle USA, Inc. (In re All Am. Semiconductor, Inc.)*, 490 B.R. 418, 435 (Bankr. S.D. Fla. 2013); *Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*, 680 F.3d 1298, 1311 (11th Cir. 2012); *see also Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990).

As discussed earlier, the Debtor did not receive any value from the SWZ Loan. The insiders put in $501,000.00 and took out $593,208.00. It was all smoke and mirrors. Moreover, under the guise of a secured loan, the Debtor encumbered and stole over $3,000,000.00 in value. The Trustee has cited to facts and evidence which illustrate the lack of value. Thus, there is a genuine issue of material fact as to the value of the Foreclosed/Transferred Assets and, by extension, whether the forgiveness of deficiency constituted reasonably equivalent value. The question of value in this case is a factual determination, and the Trustee has set forth sufficient facts and evidence to establish not

only the Defendants' lack of good faith, but also the lack of value provided.  As such, summary judgment should be denied.

### d.      Estoppel Argument Against Trustee Is Meritless.

SWZ argues that, "[i]f the amount realized by Tax Help in respect of the Foreclosed/Transferred Assets somehow is considered to be less than the fair value of such assets, the only reason that such could be the case is that the Trustee himself acted in bad faith to create precisely that result."  *See* SWZ MOL at pgs. 35, 36.  SWZ contends that "the Trustee's hands in interfering with SWZ and Tax Help's ability to service the taxpayer accounts" warrant summary judgment in its favor.

The issue before this Court is whether there is sufficient probative evidence regarding the Trustee's position relating to handling of the Debtor's mail.  The answer is that the Trustee has a substantial basis for his position that his handling of the Debtor's mail was proper and, furthermore, that SWZ's inaction with respect to its asserted interest(s) in the Debtor's mail is barred by the doctrines of estoppel and/or waiver.  The Trustee previously refuted SWZ's "unclean hands" argument, and that discussion is incorporated here by reference.

### e.      Harm to Existing/Future Creditors Supported by Evidence.

SWZ's argument that "future" creditors could not possibly be harmed by the transfer of the Foreclosed/Transferred Assets is ludicrous.  *See* SWZ MOL at pg. 36.  As discussed above in detail, immediately after Sarah Wonders' sexual harassment claim was reduced to judgment, the Debtor fraudulently transferred the Foreclosed/Transferred Assets to SWZ.  This bankruptcy was the finishing touch on a scam to hurt Wonders and other creditors.  To the extent that there were trailing liabilities (like Wonders' claim)

which would remain unsatisfied post-transfer, the element has been satisfied.  In fact, the Debtor's bankruptcy filing – approximately three (3) months after the transfer of the Foreclosed/Transferred Assets – is probative of the fact that the Debtor's remaining assets were unreasonably small in relation to the business.  *See Gilbert v. Goble (In re N. Am. Clearing, Inc.)*, 2014 Bankr. LEXIS 4274, at *1 (U.S. Bankr. M.D. Fla. Sep. 29, 2014) ("In weighing the evidence of unreasonably small capital, a court must examine the ability of the debtor to generate enough cash from operations and sales of assets to pay its debts and remain financially stable after a transfer").  Moreover, this bankruptcy was a strategically-planned event in order to thwart Wonders' collection efforts.  Accordingly, summary judgment should be denied.

> **3.    Summary Judgment Should Be Denied With Respect to Count VI Because The Transfers Were Fraudulent As To Present Creditors Under Florida Statutes Title XLI, § 726.106(1).**

The Complaint alleges that the Two Year Transfers and the Foreclosed/Transferred Assets were fraudulent under FUFTA § 726.106(1) as to present creditors.  *See* Exh. N of Trustee's MOL at ¶ 69-76 (Complaint).  FUFTA § 726.106(1), titled "Transfers fraudulent as to present creditors," provides:

> (1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

> **a.    The Debtor Did Not Receive Reasonably Equivalent Value**

SWZ once again argues, incorrectly, that the Debtor received reasonably equivalent value for the Two Year Transfers and the Foreclosed/Transferred Assets and, therefore,

summary judgment should be entered in its favor.  *See* SWZ MOL at pg. 34.  For the same reasons discussed above, the Debtor did not receive any value for the Two Year Transfers and the Foreclosed/Transferred Assets, and SWZ's request for summary judgment should be denied.

> **4.      Summary Judgment Should Be Denied With Respect to Count VII Because The Transfers Were Fraudulent Under 11 U.S.C. § 544 And Florida Statutes Title XLI, § 726.106(2).**

The Complaint alleges that the Two Year Transfers and the Foreclosed/Transferred Assets were fraudulent under FUFTA § 726.106(2).  *See* Exh. N of Trustee's MOL (Complaint) at ¶ 69-76.

> **a.      Section 726.106(2) Claim is Not Time Barred.**

SWZ alleges that the Trustee's claims under FUFTA section 726.106(2) are time-barred and must be dismissed. However, SWZ incorrectly argues that the transfer of the Foreclosed/Transferred Assets occurred at the *signing* of the SWZ Loan on April 11, 2012. *See* SWZ MOL at pg. 33-34.  This is incorrect.  The mere granting of a security interest to a lender is not synonymous with the actual transfer of the asset for purposes of FUFTA.

The Transfer of the Foreclosed/Transferred Assets occurred on November 27, 2013, when the Stipulation of Settlement was signed by all the parties. *See* Exh. N to SWZ MOL (Stipulation of Settlement).  The voluntary petition initiating the above-captioned case was filed on March 5, 2014.  Under section 108(a) of the Bankruptcy Code provides

(a) [i]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within the debtor may commence an action, and such period has not  expired before the date of the filing of the petition, the trustee  may commence such action only before the later of –

(1) The end of such period, including any suspension of such period occurring on or after the commencement of the case; or

43

(2) Two years after the order for relief.

11 U.S.C. § 108(a).

A transfer is defined by the statute as: "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Fla. Stat., §726.102(14). Moreover, subsequent transfers effected in connection with the enforcement of a security interest may occur on a date different from the date on which the security interest was perfected. *See In re Venice-Oxford Assocs.*, 236 B.R. 820, 828 (Bankr. M.D. Fla. 1999). Courts have held in a preference action that the date of transfer for purposes of section 547 of the Bankruptcy Code is the date the state court entered *final judgment of foreclosure* awarding ownership of rents to mortgagee, not date security interest in rents was perfected when mortgage was recorded. *Id.* at 836.

Because the one-year statute of limitation would not have expired until November 27, 2014 and the bankruptcy filing was commenced before the expiration of the statute of limitations, the Trustee was able to bring such action until March 5, 2016. *See* 11 U.S.C. § 108(a). Accordingly, the Trustee's claims are not time-barred, and summary judgment must be denied.

**b.      Ordinary Course of Business Defense Does Not Exist.**

The Trustee previously addressed SWZ's "ordinary course" defense and incorporates that response here. Because this action involves fraudulent transfers by insiders, there is nothing "ordinary" about the dealings at issue, and SWZ is not entitled to summary judgment on the basis of the defense asserted.

44

### c.       SWZ Is Not a Mere Conduit.

Once again, the Trustee previously addressed SWZ's mere conduit argument and incorporates that response here.  The Trustee has established there is probative evidence raising a genuine issue of material fact as to whether SWZ lacked dominion and control over the transfers and, by extension, could avail itself of a "mere conduit" defense. In sum, the agreement governing SWZ's relationship with the loan participants did not restrict SWZ's ability to put transfers received from the Debtor to its own use, in an account of its choosing.  Accordingly, for all the reasons discussed *supra*, SWZ's request for relief should be denied.

**E.       Summary Judgment Should Be Denied on Counts VIII, IX and X Because The Transfers Are Avoidable Under 11 U.S.C. § 550 and Under Florida Statutes Title XLI, § 726.108.**

**1.       The Transfers Are Voidable Under 11 U.S.C. § 550 and FUFTA § 726.108.**

SWZ incorrectly argues that the transfers are not voidable under section 550 of the Bankruptcy Code and FUFTA § 726.106(1). *See* SWZ MOL at pgs. 38-39.  As set forth in detail above, the Trustee has addressed why the Two Year Transfers and the Foreclosed/ Transferred Assets are voidable.  Neither SWZ nor Tax Help have met their burden under Federal Rule of Civil Procedure 56, made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056.

Accordingly, summary judgment must be denied.

**2.**   **Neither SWZ Nor Tax Help Are Entitled to Any Defenses Under 11 U.S.C. § 548(c) and FUFTA §§ 726.104(2) and 726.109(4).**

**a.**   **SWZ Has No Defense Under 11 U.S.C. § 548(c) and FUFTA § 726.109(4).**

SWZ and Tax Help argue that they are entitled to certain defenses, including the defenses of reasonably equivalent value and value given.  For the same reasons stated previously, there are genuine issues of material fact concerning the value (if any) which the Debtor received on account of the SWZ Loan.  Further, there is probative evidence to rebut the contention that the amounts paid by SWZ post-transfer from the Foreclosed/Transferred Assets to Tax Help provided any value to the Debtor and/or its estate.

Finally, the Trustee's rights with respect to any claim held by SWZ at the conclusion of this litigation (including his rights to seek to equitably subordinate same) are fully reserved.  Accordingly, SWZ's request for summary judgment on grounds of alleged defenses under section 548(c) of the Bankruptcy Code and FUFTA section 726.109(4) should be denied.

**b.**   **Tax Help Did Not Provide Reasonably Equivalent Value Under FUFTA §§726.104(2) and 726.109.**

Tax Help argues, in the alternative, that the Trustee cannot recover under FUFTA § 726.109(1) because Tax Help received its fees in "good faith for reasonably equivalent value which was work performed in servicing the taxpayer accounts." *See* Tax Help MOL at pg. 8.  Once again, this assertion is laughable.

FUFTA section 726.104(2) states that a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted,

46

noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement. FUFTA § 726.104(2).  Additionally, fraudulent conveyance law aims "to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away." *Goldberg v. Sotheby's Int'l Realty, LLC (In re Sol, LLC)*,  No. 09-12684-BKC-AJC, 2012 Bankr. LEXIS 3047, at \*35-36 (Bankr. S.D. Fla. June 3, 2012) *(citing Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000)); *see also Becker v. Becker*, 416 A.2d 156, 161-62 (Vt. 1980) (purpose of state statute is to prevent the conveyance from depriving creditors of the means of collecting their debts).

FUFTA section 726.109 provides an affirmative defense to a recipient (the transferee) of a fraudulent transfer if the transferee gave value and acted in good faith.  *See Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002).  Recipients who rely on this defense bear the burden of proving their own good faith.  *Id.; see also Jobin v. McKay* (*In re M&L Business Machine Co.)*, 84 F.3d 1330, 1338 (10th Cir. 1996); *Noland v. Hunter (In re Nat'l Liquidators)*, 232 B.R. 99 (Bankr. S.D. Ohio 1999).  Courts will determine whether the "good faith" defense is established by looking at the actions and knowledge (both actual knowledge and imputed knowledge) of the recipient.  *Id.*  Good faith is not a precise, defined term.  *Id.*  Good faith is judged using an objective standard.  *Id.  See Jobin*, 84 F.3d at 1337-39 (good faith should be measured using an objective standard which examines whether circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose); *Hays v. Jimmy Swaggart*

*Ministries, et al.*, 263 B.R. 203, 211 (M.D. La. 1999) ("Good faith is determined on a case-by-case basis using an objective standard …").

Here, it is clear from the facts and evidence produced by the Trustee that Tax Help gave no value and was part of the entire fraudulent scheme.  The principal of Tax Help, Dean Drouin, was also one of the original equity members in the Debtor. *See* Exh. C to SWZ MOL (recitals).  Dean Drouin left the Debtor in June, 2012 to start his own tax firm, Tax Help MD. *See* Exh. U to SWZ MOL (Dean Drouin Aff.) ¶3.  In the calendar year 2012, Dean Drouin received over $115,000 from the Debtor, all made payable to different companies. The Trustee is still waiting for documents from Tax Help as well as the deposition of Dean Drouin which the Trustee believes will shed further light on the relationships of all of these parties.

Dean Drouin and his staff serviced all of these accounts prior to his resignation.  He was aware of the amount of mail that the Debtor would receive on a daily basis and it should have been clear that Tax Help was not receiving all of the mail. Tax Help attributed the low receivable collection rate on not having the mail, yet no one from Tax Help *ever* went to SWZ to say no mail is coming in and that not having the mail was causing a problem for collections.  *See* Exh. K to SWZ MOL (Zentner Dep. Tr.) 51:15-53:8.   Tax Help -- just like SWZ -- knew exactly what was going on and was part of the fraudulent plan from the beginning.

### c.    Trustee Can Recover From Tax Help Under 11 U.S.C. § 550(b).

Tax Help argues that the Trustee cannot recover against it because it [Tax Help] received transfers for value and in good faith. *See* Tax Help MOL at pg. 7. Once again, the facts are clear that Tax Help (and Dean Drouin) was intimately involved in the entire

fraudulent scheme.    Dean Drouin individually, and through his companies, were continuously receiving money from the Debtor through the calendar year 2012.  He was on both sides of this transaction from the inception.  There is no evidence of good faith by Tax Help or Dean Drouin, and the Trustee has provided substantial evidence of their bad faith.  As such, this is a material fact that is in dispute.

Section 550(b) of the Bankruptcy Code provides an affirmative defense to a fraudulent transfer if (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee. *See* 11 U.S.C. § 550(b).  This test is written in the negative - provided that liability is satisfied under section 548 of the Bankruptcy Code, the transfers are avoidable unless (a) they were not made for the benefit of defendants; and (b) defendants did not receive the transfers in satisfaction of a debt, were not acting in bad faith and had no knowledge of the avoidability of the transfers. *Burtch v. Masiz (In re Vaso Active Pharms., Inc.)*, 500 B.R. 384, 401 (Bankr. D. Del. 2012).  Courts generally evaluate good faith defenses on a case-by-case basis. This requires the court examine what the transferee objectively "knew or should have known," such that a transferee does not act in good faith when it has sufficient knowledge to place it on inquiry notice of the voidability of the transfer. *See id.*

It is clear that Tax Help cannot avail itself of the defense of good faith as it had intimate details of the fraudulent scheme as Tax Help (and Dean Drouin) were part of this scheme from the beginning.  Dean Drouin knew of the sexual harassment claim by Wonders because he was an owner of the company.  In June, 2012, after Wonders quit, he

49

leaves the Debtor and starts the exact same business.  His new company, Tax Help, even receives payments from the Debtor in August and October 2012.  Tax Help knew everything that was happening.

At bottom, to prevail on summary judgment, Tax Help must demonstrate that there is no genuine issue of material fact that it neither knew nor had sufficient knowledge of the voidability of the transfers.  Tax Help has not provided any such evidence.  In fact, based on the Drouin Affidavit, along with the evidence produced by the Trustee, quite the opposite has been proven. Accordingly, summary judgment must be denied.

>    **3.      Summary Judgment Is Not Appropriate On The Question of Whether Tax Help Is A Transferee and/or What, If Any, New Value It Provided.**

With respect to Tax Help's contentions that it is not a transferee of the Debtor's assets and, alternatively, that it contributed subsequent new value to the Debtor's estate as servicer, the Trustee notes that the summary judgment request as it applies to Tax Help is premature.  The Trustee's discovery with respect to Tax Help is not complete; the current scheduling order contemplates that the Trustee will take the deposition of Tax Help's representative, Drouin, at a date to be determined.  The Trustee reserves the right to supplement his response on this point after discovery has closed.

Further, with respect to Tax Help's asserted "new value" defense, the Trustee reserves the right to supplement his response regarding same after the above-referenced discovery has been completed.  It is unclear whether Tax Help's management of the customer accounts post-transfer added to -- or impaired the value of -- the accounts in question.  Specifically, the Trustee has produced credible evidence suggesting that SWZ and Tax Help failed to open mail from the IRS related to the customer accounts which were

50

part of the Foreclosed/Transferred Assets.  Accordingly, this Court should deny summary judgment on this point.

**F.     Allerand Breached Its Fiduciary Duties to The Debtor And Sabella Assisted In The Breach And, Therefore, Summary Judgment Must Be Denied With Respect To Counts XI and XII.**

Summary judgment is not appropriate under Counts XI and XII because there exist genuine issues of material fact.

**1.       Allerand Owed Fiduciary Duties To The Debtor.**

Section 18-1104 of the Delaware Limited Liability Company Act provides that, unless the limited liability company agreement states otherwise, the managers and controlling members of a limited liability company owe fiduciary duties of care and loyalty to the limited liability company and its members.  Here, the Debtor's limited liability company agreement allegedly contained a limitation of liability provision which limited the ability of the Debtor or another Member to claim damages against a Member except in cases of "willful misconduct."  *See* Tax Help MOL at pgs. 9-10.

The Defendants mischaracterize the provision in the Debtor's LLC agreement as "waiving" liability for fiduciary duty claims.  *See* Tax Help MOL at pg. 10 ("Allerand's only 'duty' to the Debtor and to other members of the Debtor was a contractually-imposed agreement not to commit 'willful misconduct.'  All other 'duties implied by law are waived.").  The LLC agreement provision cited – section 10 – doesn't "waive" anything**.** *See* Exh. C to SWZ MOL (Second Amended LLC Agreement) at ¶ 10.  Moreover, Delaware Courts have held that fiduciary duties do exist in LLC agreements.  *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012) (LLC agreement provision "(i) assumes that default fiduciary duties exist, (ii) limits only the potential availability of a

monetary remedy, not the potential for injunctive or other equitable relief, and (iii) restores the availability of damages as a remedy for, among other things, gross negligence and willful misconduct.").

"Willful misconduct" is defined in Delaware's Trust Act, 12 Del. Code § 3303(a), as "'intentional wrongdoing, not mere negligence, gross negligence or recklessness and 'wrongdoing' means malicious conduct or conduct designed to defraud or seek an unconscionable advantage.' Willful misconduct appears to be a subjective standard that depends on the alleged wrongdoer's state of mind." *Mennen v. Wilmington Tr. Co.*, No. 8432-ML, 2015 Del. Ch. LEXIS 122, at *79 (Ch. Apr. 24, 2015).

Here, the facts are clear. Sabella orchestrated the entire fraudulent scheme. The evidence uncovered by the Trustee during discovery (which is not complete), described in detail above, is more than sufficient to demonstrate "willful misconduct" on the part of Allerand. To review, Allerand allowed the Debtor to enter into the fraudulent SWZ Loan and permitted the Debtor's equity to be stripped from it. In the calendar year 2012, Allerand alone received $350,000 from the Debtor. Allerand allowed SWZ to take the Debtor's assets within days of the Debtor being served with a default notice. The Debtor's own Receivables Valuation had valued the receivables at more than $550,000. *See* Exh. R to Trustee's MOL. In short, these and other facts stated by the Trustee create a genuine issue of material fact regarding whether Allerand breached a duty owed to the Debtor by engaging in "willful misconduct."

> **2. Breach of Fiduciary Duty is a Colorable Claim Supported By Evidence.**

Initially, the Defendants allege that "[n]owhere in the Complaint does the Trustee allege that the act of the Debtor entering into the Credit Agreement was a breach of

fiduciary duty." *See,* Tax Help MOL at pg. 13.  By extension, the Defendants contend that "the obligations under the Credit Agreement are not at issue; they are real obligations of the Debtor." *See* Tax Help MOL at pg. 13.  The Defendants have a myopic view of the record developed during the course of this adversary proceeding.  To the contrary, the entire course of events here, taken together – SWZ entering into the Loan Agreement with the Debtor and, subsequently, proceeding to strip equity for the benefit of insiders before taking the entire business – was a fraudulent scheme.

Next, the Defendants contend that the fiduciary duty claims "amount to allegations that Allerand, the Debtor's Managing Member, chose to pay SWZ's outstanding (secured) loan instead of paying other (unsecured) creditors." *See* Tax Help MOL at pg. 13.  Further, the Defendants contend that "the Trustee's claim merely alleges harm which, if proven, amounts to injury to the general unsecured creditors of the Debtor, not the Debtor itself." *Id.*  As noted above, the Trustee contends that the entire course of events here, taken together, amounted to a carefully-planned taking of the Debtor's operations for the benefit of insiders.

Next, the Defendants posit that "the directors do not have a duty to protect creditors of an insolvent corporation at the expense of the corporation and its shareholders." *See,* Tax Help MOL at pg. 13.  Defendants cite to *North American Catholic Education Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007) concerning whether and what fiduciary duties directors owe to the company's creditors and, by extension, when and under what circumstances creditors could enforce those duties.  In *Gheewalla*, the Delaware Supreme Court held that the directors of an insolvent firm do not owe any particular duties to creditors.  *Id.*  However, they continue to owe fiduciary duties to the

53

corporation for the benefit of all of its residual claimants, a category which now includes creditors.

In *Quadrant Structured Products Co. v. Vertin*, No. 6990-VCL, 2015 WL 2062115 (Del. Ch. May 4, 2015), another case cited by the Defendants, the Delaware Court of Chancery held that, in order for a creditor to maintain a derivative suit against directors for breach of fiduciary duty, a creditor need only establish that the company was balance sheet insolvent at the time the suit was filed and that the creditor's standing will not be extinguished if the company rides back into solvency during the litigation.

In the Tax Help MOL, the Defendants further argue that "there [was] no damage to the Debtor by the transfer of the Two-Year Transfers" because "[t]he Debtor is not injured when a Director/Manager directs the company to pay one creditor instead of another, regardless of any applicable security interests." *See* Tax Help MOL at pg. 14. That argument is nonsensical. The Defendants entered into a fraudulent loan, the SWZ Loan, to payoff insiders and shareholders. The Defendants mischaracterize the alleged breaches of fiduciary duty involved in this case as the Debtor's management favoring one creditor over another.

Via discovery, the Trustee has uncovered a fraudulent scheme designed to favor insiders at the expense of non-insider creditors generally and, in particular, a "vocal" creditor (Wonders). As detailed above, the SWZ Loan closed, insiders were paid from the loan proceeds at closing, and the secured loan was a vehicle to ensure that insiders were able to both strip value from the Debtor's operations and, after they successfully bought the Debtor to its knees, walk away with the Debtor's remaining assets. In short, this case has little to do with legal principles which govern arms-length transactions between

54

unrelated parties.  Rather, this case involves interrelated, insider entities playing a complex game with the Debtor's business at the expense of both the Debtor and non-insider creditors.

### 3.      Allerand Breached Its Fiduciary Duty.

Insider transactions are subject to heightened scrutiny under Delaware law. See *Pereira v. Cogan*, 267 B.R. 500, 503 (S.D.N.Y. 2001) ("When a controlling shareholder or other insider engages in a self-dealing transaction that is not approved by an independent board (acting in accordance with certain standards), the transaction is unlawful unless the proponent thereof carries his burden of justifying it under the Delaware "entire fairness" doctrine.").

An "insider" is a defined term under section 101(31) of the Bankruptcy Code, which provides, in relevant part:

> (31)  The term "insider" includes—
>
> \*\*\*
> (B) if the debtor is a corporation—
>
> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control of the debtor;
>
> \*\*\*
>
> (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and
>
> (F) managing agent of the debtor.

55

11 U.S.C. § 101(31). A limited liability company is considered a "corporation" for purposes of section 101(31) of the Bankruptcy Code. *Bur-Cam Group, LLC v. Pearson (In re Pearson)*, No. 1:10-ap-00184, 2010 Bankr. LEXIS 3553, at *7, 8 (Bankr. M.D. Pa. Oct. 7, 2010) (holding that a limited liability company is the equivalent of a corporation for purposes of § 101(31)(A)(iv)); *see also Longview Aluminum, L.L.C. v. Brandt*, 431 B.R. 193, 197 (N.D. Ill. 2010); *In re Barman*, 237 B.R. 342, 348 (Bankr. E.D. Mich. 1999) (LLC is analogous to a corporation for determination of insider status).

Further, given that section 101(31) is framed in non-exclusive terms (the definition "includes" the identified categories), courts have labeled the class of insiders who are not specifically identified by statute as "non-statutory" insiders. The United States Court of Appeals for the Third Circuit has defined non-statutory insiders as those who do not necessarily have "actual control" over a debtor – "rather, the question 'is whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length." *Shubert v. Lucent Techs. Inc (In re Winstar Communs., Inc.)*, 554 F.3d 382, 397 (3d Cir. 2009); *cf. Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 79 (Bankr. D. Del. 2010) ([i]n circumstances where the plaintiff seeks to equitably subordinate the claim of a fiduciary or insider of the debtor who is also a creditor/ the line between the defendant creditor and the debtor is often blurred. The insider creditor is typically in a position to exert control over the debtor. The creditor may also share common management and/or ownership with the debtor. In its efforts to collect its debt, therefore, the creditor may act directly or cause the debtor to act.").

Here, the Defendants fixate separately on three elements of the scheme:  the SWZ Loan (Tax Help MOL, at pg. 16); the Two-Year Transfers (Tax Help MOL, at pg. 17); and the foreclosure settlement (Tax Help MOL, at pg. 17).  The Defendants contend that, if SWZ and the Debtor were not related and were acting at arm's length, there is no genuine issue of material fact, making summary judgment appropriate.  However, the Trustee has pointed to a host of circumstances – supported by evidence – which indicate that (i) SWZ is an insider of the Debtor due to its close relationship with the Debtor and the various connections/relationships among/between their respective principals and (ii) the SWZ Loan and the subsequent foreclosure were not arms-length transactions.

Allerand cites to *Odyssey Partners, L.P. v. Fleming Cos.*, 735 A.2d 386, 414-15 (Del. Ch. 1999) in positing that Allerand is not liable for a breach of fiduciary duty by transferring the Foreclosed/Transferred Assets to SWZ.  In *Odyssey Partners*, the issue was whether the debtor's majority shareholder/secured creditor owed fiduciary obligations to the debtor's minority shareholders in exercising its statutory rights as a secured creditor. *Id.*  That issue is substantially different than the one presented in the instant action.  Here, the Trustee is arguing that Allerand breached its obligations to the Debtor by failing to protect its interests vis-à-vis SWZ; the Trustee is not alleging that SWZ breached a fiduciary duty owed to the Debtor.  In short, *Odyssey Partners* is factually inapposite.

### 4.    Defendants' "Unclean Hands" Argument (With Respect to Delaware Fiduciary Claims) is Meritless.

The Trustee refers to and incorporates by reference his refutation of the Defendants' "unclean hands" argument, addressed earlier in this Memorandum, in response.  In sum, Allerand is not entitled to summary judgment on this point, as there is substantial probative

evidence proving that (i) the Trustee has clean hands and (ii) Allerand and its principal, Sabella, have unclean hands.

### 5.    Sabella Aided and Abetted The Breach Of Fiduciary Duty.

Sabella incorporates by reference Allerand's argument regarding the breach of fiduciary duty claim. *See* Tax Help MOL at 19-21. The Trustee, in turn, incorporates his response to Allerand's argument. There is substantial proof that Allerand breached fiduciary obligations owing to the Debtor and, accordingly, Sabella's request for summary judgment should be denied.

Sabella re-hashes the argument that, because (i) the liquidation of the customer receivables allegedly resulted in proceeds of $85,760.60 and (ii) the Debtor received a release of debt with a face amount approximately $250,000 greater than the proceeds realized, the Debtor was not damaged. Again, the Trustee incorporates his prior response to this argument. There are genuine issues of material fact regarding the value transferred and the value received – accordingly, summary judgment is not warranted.

Finally, Sabella argues that he is not liable for "aiding and abetting" in his "individual capacity" as opposed to "in his capacity as managing member of Allerand." Tax Help MOL at 20. The Debtor is, admittedly, a Delaware LLC. Under Delaware law, Allerand's managing member is liable for Allerand's breaches of duty. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 659 (Del. Ch. 2012) ("'[W]here a corporate General Partner fails to comply with a contractual standard [of fiduciary duty] that supplants traditional fiduciary duties, and the General Partner's failure is caused by its directors and controlling stockholder, the directors and controlling stockholder remain

58

liable.'") (*citing Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002)).

## IV.    **CONCLUSION**

For the reasons discussed herein at length, summary judgment is inappropriate on all counts of the Complaint.  The discovery received by the Trustee to date has uncovered a massive fraud.  The SWZ Loan was a sham designed to defraud creditors.  Further, discovery has not completed, and the Trustee will be taking the deposition of Tax Help's 30(b)(6) designee, Dean Drouin.

WHEREFORE the Trustee requests that this Court deny the Motions.

Dated: October 31, 2016                          CIARDI CIARDI & ASTIN
      Wilmington, Delaware


                                    */s/ Joseph J. McMahon, Jr.*
                                    Daniel K. Astin (No. 4068)
                                    John D. McLaughlin, Jr. (No. 4123)
                                    Joseph J. McMahon, Jr. (No. 4819)
                                    1204 N. King Street
                                    Wilmington, Delaware 19801
                                    (302) 658-1100 telephone
                                    (302) 658-1300 facsimile
                                    jmcmahon@ciardilaw.com

                                    -and-

                                    Albert A. Ciardi, III, Esquire
                                    Nicole M. Nigrelli, Esquire
                                    One Commerce Square, Suite 3500
                                    2005 Market Street
                                    Philadelphia, PA 19103
                                    (215) 557-3550 telephone
                                    (215) 557-3551 facsimile
                                    aciardi@ciardilaw.com
                                    nnigrelli@ciardilaw.com

                                    *Attorneys for George L. Miller,*
                                      *Chapter 7 Trustee*