## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| UNITED TAX GROUP, LLC, | Case No. 14-10486 (LSS) |
| Debtor. | |
| GEORGE L. MILLER,<br>Chapter 7 Trustee, | |
| Plaintiff, | Adv. Pro. No. 15-50880 (LSS) |
| v. | |
| SWZ FINANCIAL II, LLC,<br>TAX HELP MD INC.,<br>ALLERAND, LLC, AND<br>RICHARD J. SABELLA | Re: Adv. Docket Nos. 94, 95, 96, 97 |
| Defendants. | |

## MEMORANDUM ORDER DENYING MOTION TO AMEND

This matter comes before the Court on the Motion of George L. Miller, Chapter 7 Trustee, for Leave to Amend Complaint ("Motion to Amend")[1] and his opening brief[2] in support thereof.

**Background**

1.      On March 5, 2014, United Tax Group, LLC ("Debtor") filed a voluntary petition under chapter 7 of the United States Bankruptcy Code.  George L. Miller was appointed the chapter 7 trustee ("Trustee").

---

[1] Oct. 31, 2016, ECF No. 94.
[2] Brief of George L. Miller, Chapter 7 Trutee, in Support of Motion for Leave to Amend Complaint ("Opening Brief"), Oct. 31, 2016, ECF No. 95.

2.    On June 25, 2015, the Trustee filed a complaint ("Complaint") commencing

the above captioned adversary proceeding against SWZ Financial II, LLC ("SWZ"), Tax

Help MD, Inc. ("Tax Help"), Allerand, LLC, and Richard Sabella (collectively,

"Defendants").[3] The Complaint describes a simple fact scenario: (i) on April 11, 2012 the

Debtor executed a Credit Agreement with SWZ under which SWZ loaned the Debtor

$501,000; (ii) the Credit Agreement required repayment of the loan in six interest-only

installments followed by thirty-six monthly payments of principal and interest; (iii) the

Debtor made a series of monthly transfers to SWZ beginning with an April 11, 2012

payment of Closing Fees, continuing with interest only and principle and interest payments,

and concluding with an October 11, 2013 payment labeled "Accounts Payable" (the "Two

Year Transfers," and the subset of those transfers occurring in the year prior to the

bankruptcy filing as the "One Year Transfers"); (iv) on November 19, 2013, one day after

judgment was entered against the Debtor (and in favor of former employee, Sarah

Wonders), SWZ initiated a foreclosure action in Florida state court alleging a default under

the Credit Agreement; (v) one week later, on November 26, 2013, the Debtor transferred to

SWZ "certain assets, which included assigning the customer contracts and related

receivables," (the "Foreclosed/Transferred Assets"); and (vi) thereafter SWZ transferred all

or part of the Forclosed/Transferred Assets to Tax Help.

3.    Based on these facts, the Trustee seeks to avoid the One Year Transfers, Two

Year Transfers and Forclosed/Transferred Assets and asserts claims for breach of fiduciary

duty and the aiding and abetting thereof.  The Trustee seeks damages in an amount not less

---

[3] Complaint of George L. Miller, Chapter 7 Trustee, Against SWZ Financial II, LLC, Tax Help
MD Inc., Allerand, LLC, and Richard J. Sabella Pursuant to 11 U.S.C. §§ 544 and 548, Florida
Statutes Title XLI, § 726.105 *et seq.*, Federal Rule of Bankruptcy Procedure 7001, and Applicable
Law, June 25, 2015, ECF No. 1.

than $3 million on the Foreclosed/Transferred Assets plus the amount of the Two Year Transfers. The Complaint sounds in 12 counts, as follows:

| Count | Claim | Defendant(s) |
|---|---|---|
| Count I | § 547 preference claim: One Year Transfers | SWZ |
| Count II | § 547 preference claim: Security Interest | SWZ |
| Count III | § 547 preference claim: Foreclosed/Transferred Assets | SWZ |
| Count IV | § 548(a)(1)(B) constructive fraudulent conveyance claim: Foreclosed/Transferred Assets; Two Year Transfers | SWZ |
| Count V | § 544, Florida Statutes Title XLI, § 726.105(1)(b): constructive fraudulent conveyance claim as to present and future creditors: Two Year Transfers | SWZ |
| Count VI | § 544, Florida Statutes Title XLI, § 726.106(1): constructive fraudulent conveyance claim as to present creditors: Foreclosed/Transferred Assets; Two Year Transfers | SWZ |
| Count VII | § 544, Florida Statutes Title XLI, § 726.106(2): constructive fraudulent conveyance claim/insider as to present creditors: Foreclosed/Transferred Assets; Two Year Transfers | SWZ |
| Count VIII | § 550: recovery of avoided transfers against initial/immediate or mediate transferee: Foreclosed/Transferred Assets | SWZ Tax Help |
| Count IX | § 550: recovery of avoided transfers against initial/immediate or mediate transferee: Two Year Transfers | SWZ |
| Count X | Florida Statutes Title XLI, § 726.108: recovery of avoided transfers: Foreclosed/Transferred Assets; Two Year Transfers | SWZ Tax Help |
| Count XI | Breach of fiduciary duty | Allerand, LLC |
| Count XII | Aiding and abetting breach of fiduciary duty | Sabella |

4.    The Defendants jointly answered the Complaint on July 30, 2015, generally denying all claims and raising multiple defenses.[4]

---

[4] Answer and Affirmative Defenses to Complaint of George L. Miller, Chapter 7 Trustee, Against SWZ Financial II, LLC, Tax Help MD Inc., Allerand, LLC and Richard J. Sabella Pursuant to 11 U.S.C. §§ 544 and 548, Florida Statutes Title XLI, § 726.105 et seq., Federal Rule of Bankruptcy Procedure 7001, and Applicable Law ("Answer"), July 30, 2015, ECF No. 4.

5.    Discovery proceeded, and, pursuant to multiple scheduling and other orders entered on the docket or from the bench, fact discovery concluded on August 19, 2016 except for (i) depositions of Dean Drouin, Sarah Wonders and Dorreen Mangino and (ii) discovery of documents related to taxpayer accounts and mail sought under reciprocal motions to compel.[5]

6.    On September 2, 2016, each Defendant filed a motion for summary judgment together with an opening brief.  On October 31, 2016, the Trustee filed his answering memorandum of law in opposition to the summary judgment motions.  He also filed the Motion to Amend.

7.    The Trustee's Motion to Amend has attached to it a proposed amended complaint ("Proposed Amended Complaint") adding two new counts alleging that the Two Year Transfers and the Foreclosed/ Transferred Assets were transferred by the Debtor to SWZ with "actual intent to hinder, delay, or defraud" creditors.[6]  The Trustee's proposed added counts are:

| Count | Claim | Defendant |
|---|---|---|
| Count XIII | § 548(a)(1)(A)  actual fraudulent conveyance claim:  Foreclosed/Transferred Assets; Two Year Transfers | SWZ |
| Count XIV | Florida Statutes Title XLI, § 726.105(1)(a):  actual fraud conveyance claim:  Foreclosed/Transferred Assets; Two Year Transfers | SWZ |

The Trustee's additional allegations are:

> Based on information received since Sabella's testimony was taken at the Meeting of Creditors, the Trustee believes that SWZ is a company owned by Sabella, Edward Welke and Gary Zentner.

---

[5] Order, May 13, 2016, ECF No. 44; Order Granting in Part, Dec. 19, 2016, ECF No. 107.
[6] 11 U.S.C. § 548(a)(1)(A); FLA. STAT. § 726.105(1)(a).

4

In the calendar year 2012, the Debtor paid out $593,208.00 to insiders and shareholders as follows: Allerand received $350,000 from the Debtor; KD Consulting Group (a company owned by Dean Drouin ("Drouin"), the principal of Tax Help) received $97,750; Tax Help (formed in June 2012) received $15,458; GZ Investco, LLC, Zentner's company, received $97,500; and Caroline Welke received $32,500.

The loan made pursuant to the Credit Agreement, the Two-Year Transfers and the resulting foreclosure *were all part of a scheme designed to insulate the Debtor's business from non-insider claims against the Debtor*, including Wonders' claim, for the benefit of the Debtor's insiders.

The Debtor transferred the Foreclosed/Transferred Assets with the actual intent of hindering, delaying or defrauding a creditor of the Debtor.

The Debtor transferred the Two-Year Transfers with the actual intent of hindering, delaying or defrauding a creditor of the Debtor.[7]

8.      The Trustee seeks no new relief. But, the entry into the Credit Agreement takes the central role in the Trustee's two new counts.

9.      Since the filing of the Motion to Amend, the summary judgment motions have been fully briefed. The Court informed the parties at a hearing on another matter that certain of the Trustee's allegations in the complaint lacked any support in the record submitted on the summary judgment motions, and asked about the conclusion of discovery. After a discussion, it was determined that the outstanding discovery[8] would be concluded.

**Legal Analysis**

10.     Courts have discretion to grant or deny motions for leave to amend.[9] Federal Rule of Civil Procedure 15(a)(2)[10] provides, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Notwithstanding the liberal view toward amendments, grounds

---

[7] Opening Brief Ex. A, ¶¶ 113–115, 117–118 (emphasis supplied).
[8] *See supra* ¶ 5.
[9] *Foman v. Davis,* 371 U.S. 178, 182 (1962).
[10] Incorporated by reference in FED. R. BANKR. P. 7015.

that can justify denial of leave to amend include undue delay, bad faith, a dilatory motive, undue prejudice, futility, and repeated failure to cure deficiencies by previously-allowed amendments.[11]

11.    Defendants object to the Motion to Amend on multiple grounds: (1) undue delay; (2) undue prejudice; (3) bad faith; (4) futility; and (5) statute of limitations.

### A.    *The Trustee's proposed amendment is not without undue delay.*

12.    In the Third Circuit, delay alone is insufficient to deny a motion to amend.[12] In assessing whether delay is undue, courts focus on the plaintiff's reasons for not amending sooner.[13] A motion to amend may also be denied for undue delay where a party seeking to amend its pleading knew or should have known—and therefore should have pled in the first instance—the facts upon which the proposed amendment is based.[14]

---

[11]  *Id.*

[12]  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir.2001).

[13]  *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *Riverside Acquisition Group LLC v. Vertis Holdings, Inc. (In re Vertis Holdings, Inc.)*, 536 B.R. 589, 613–14 (Bankr. D. Del. 2015), *aff'd*, No. AP 12-51176-CSS, 2016 WL 7031282 (D. Del. Nov. 30, 2016); *In re Mortgage Lenders Network, USA, Inc.*, 395 B.R. 871, 876 (Bankr. D. Del. 2008).

[14]  *See Estate of Olivia ex. rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010); *Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387, 393 (3d Cir. 2004); *Heraeus Med. GmbH v. Esschem, Inc.*, 321 F.R.D. 215, 218–19 (E.D. Pa. 2017) ("Heraeus could have brought this action against Biomet in the first place . . . Heraeus has not offered a convincing explanation for its failure to do so . . . ."). Multiple other circuits have reached similar conclusions. *See, e.g., Leatherwood v. Rios*, 705 F. App'x 735, 740 (10th Cir. 2017) ("As Leatherwood knew or should have known of the facts upon which the proposed amendment is based but failed to include them in his original or first amended complaint, the motion to amend is subject to denial."); *Leonard v. Parry*, 219 F.3d 25, 30 (1st Cir. 2000) ("What the plaintiff knew or should have known and what he did or should have done are relevant to the question of whether justice requires leave to amend under this discretionary provision."); *Svoboda v. Trane Co.*, 655 F.2d 898, 900 (8th Cir. 1981) ("[A]ppellant inexplicably sought leave to amend in order to introduce new theories of liability on the eve of trial, nearly a year after the complaint had been filed. Most of the facts supporting the fraudulent misrepresentation claim were known to appellant at the time the complaint was filed."); *Automation Devices, Inc. v. Smalenberger*, 346 F.2d 288, 291 (7th Cir. 1965) (""We disagree with plaintiff that the District Court erred in refusing to allow a tardy motion to amend the complaint by insertion of new issues based on facts which plaintiff knew or should have known long before, after what the District Judge described as 'extremely involved and seemingly interminable proceedings . . . .").

13.     The Defendants' main argument in support of undue delay is that the Trustee's Proposed Amended Complaint does not rely on any new facts and thus he should have asserted the proposed actual fraud counts in the Complaint.[15] The Trustee counters that his delay in amending the Complaint resulted from his need to "[use] the discovery process to investigate and verify transfers to insiders referenced in documents obtained/produced before asserting a fraudulent conveyance claim on an "actual fraud" theory."[16] The Trustee also implies that prior to discovery the Trustee lacked the proper legal and factual foundation required by Rule 11(b) of the Federal Rules of Civil Procedure[17] to claim actual fraud.[18]

14.     The Trustee's arguments are unpersuasive.   As shown above, the Trustee's Amended Complaint contains very few new facts.   As to transfers to insiders, the Proposed Amended Complaint asserts:

> Based on information received since Sabella's testimony was taken at the Meeting of Creditors, the Trustee believes that SWZ is a company owned by Sabella, Edward Welke and Gary Zentner.
>
> In the calendar year 2012, the Debtor paid out $593,208.00 to insiders and shareholders as follows: Allerand received $350,000 from the Debtor; KD Consulting Group (a company owned by Dean Drouin ("Drouin"), the principal of Tax Help) received $97,750; Tax Help (formed in June 2012) received $15,458; GZ Investco, LLC, Zentner's company, received $97,500; and Caroline Welke received $32,500.

---

[15] Defendants SWZ Financial II, LLC; Tax Help MD, Inc.; Allerand, LLC; and Richard J. Sabella's Answering Brief in Opposition of Trustee's Motion for Leave to Amend Complaint ("Anwering Brief") 7, Nov. 14, 2016, ECF No. 96.

[16] Reply Brief of George L. Miller, Chapter 7 Trustee, in Support of Trustee's Motion to Amend Complaint ("Reply Brief") 5, Nov. 21, 2016, ECF No. 97.

[17] Incorporated by reference in FED. R. BANKR. P. 7011.

[18] Opening Brief at 6.  The Trustee relies on *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 226 (E.D. Pa. 2012) ("The Federal Rules of Civil Procedure require that a party have a proper legal and factual foundation before initiating a lawsuit or filing a claim against a party. Fed.R.Civ.P. 11(b).").

The Defendants assert that these facts were all known to the Trustee either through the record developed at the 341 Meeting or documentary evidence which the Defendants assert was in the Trustee's possession since the beginning of the bankruptcy proceedings.[19] The documentary evidence referenced is a printout of the register of Debtor's PNC bank account ending in 6624, for the period from 01/01/2012 through 12/31/2012, which reflects all payments from this account, including date, payee and amount. The run date of the report is 3/13/2014 at 3:28 PM. The Trustee's Reply Brief does not dispute these specific assertions, including the timing of the possession of these documents. Thus, the Trustee had an ability to plead the new facts at the time he originally filed the Complaint.

15.     The Trustee also suggests he should be given some leeway in his pleading because he is a chapter 7 trustee. The Trustee contrasts the instant case against one in which "the plaintiff is a corporate going-concern and there are control persons with personal knowledge regarding pre-petition events assisting with the plaintiff's prosecution of the case."[20] There is case law to the effect that pleading standards under Federal Rule of Civil Procedure 9(b)[21] for actual fraudulent transfers are "relaxed and interpreted libierally" where a chapter 7 trustee is asserting the claims.[22] Here, however, the Trustee had a resource almost as valuable as a control person—Sarah Wonders. Ms. Wonders, a disgruntled former employee, had successfully litigated Title VII claims against the Debtor prepetition

---

[19] Answering Brief at 6–7.
[20] Opening Brief at 6.
[21] Incorporated by reference in FED. R. BANKR. P. 7009.
[22] *Official Comm. Of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009). *See Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus., Inc.)*, No. AP 14-50377 (MFW), 2015 WL 3827003, at *4 (Bankr. D. Del. June 19, 2015) ("This is because the trustee often does not have all the facts that the debtor in possession would have about the conduct of the parties pre-petition.").

and, as set forth in the Complaint, received a judgment just one day before the Debtor's transfer of the Foreclosed/Transferred Assets.

16.    Early in the bankruptcy case (and over a year prior to the filing of this adversary proceeding), Ms. Wonders filed a motion seeking relief from the automatic stay so that the trial court in the Title VII litigation could rule on a motion for attorney's fees and costs.[23] In that motion, Ms. Wonders relates that in addition to her Title VII litigation, she commenced an action in Florida state court seeking injunctive relief and damages pursuant to the Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.105 and 726.106 against multiple entities, including the Debtor, SWZ, SWZ Financial II, Richard Sabella, and Edward Welke (the "FUFTA Action").[24] In the FUFTA Action, Ms. Wonders "alleged facts that the Debtor and/or its officers and members, subsequent to their knowledge of the Movant's claims in the Florida Action transferred personal property, assets, and receivables of the Debtor to its affiliates and or insiders, without compensation or value, immediately following the trial of the Florida Action to avoid paying the Final Judgment."[25] It appears that the Trustee was thereafter supplied with a copy of the complaint in the FUFTA Action.[26] While unclear whether the Trustee used Ms. Wonders as a resource, she was certainly available to him.

17.    Further, the Trustee's testimony in this bankruptcy case shows that since his first involvement in the case he was suspicious of SWZ's dealings with the Debtor.

---

[23] Motion of Sarah Wonders for Limited Relief from the Automatic Stay, Apr. 17, 2014, Case No. 14-10486 ECF No. 17.
[24] *Id.* at ¶ 6 [sic]. The motion is incorrectly numbered, and the reference is to the second paragraph numbered 6.
[25] *Id.*
[26] Reply of Sarah Wonders to the Objection of George L. Miller, Chapter 7 Trustee, to the Motion of Sarah Wonders for Limited Relief from the Automatic Stay Ex. A, May 5, 2014, Case No. 14-10486 ECF No. 25.

Testimony in connection with the *Barton* motion[27] revealed that the Trustee visited the

Debtor's offices on March 14, 2014, a mere two weeks following his appointment.[28]  At that

time, the Trustee was told of the prepetition foreclosure and stated that SWZ would regret

that it had foreclosed prebankruptcy rather than under the auspices of the bankruptcy

court.[29]  At a very contentious 341 Meeting eighteen days later, the Trustee focused on

insider transfers, asked for further information and threatened Rule 2004 investigations if

such information was not forthcoming.  Since that time, the animosity between the parties

has only grown with a series of motions in which each asked the Court to award sanctions

against the other.  It is simply inconceivable that the Trustee did not consider an actual

fraudulent conveyance claim in these circumstances.

18.    Finally, the Motion to Amend was filed sixteen months after the adversary

proceeding was commenced, multiple months after the close of extended fact discovery,[30] on

the last day to file dispositive motions,[31] and in response to Defendants' motions for

summary judgment filed almost two months prior.[32]  The timing of the Motion to Amend

thus also supports a finding that the delay is undue.[33]

---

[27] Motion for Leave to File Complaint Seeking Damages Against Bankruptcy Trustee and his Counsel (Barton Motion), May 26, 2017, Case No. 14-10486 ECF No. 118.
[28] Dec. 20, 2017 Barton Motion Hr'g Tr. 44, 69 (transcript available at Case No. 14-10486 ECF No. 163); Barton Ruling Hr'g Tr. 16–18 (transcript available at Case No. 14-10486 ECF No. 162).
[29] Barton Ruling Hr'g Tr. 17.
[30] The Trustee argues that the Motion to Amend was brought prior to the close of fact discovery. Motion to Amend p. 6.  The Trustee is incorrect.  With the limited exceptions previously noted, fact discovery was closed prior to the Trustee filing its Motion to Amend.
[31] *First Amended* Scheduling Order ¶ 7, Jan. 26, 2016, ECF No. 17.
[32] *See Berger v. Edgewater Steel Co.,* 911 F.2d 911, 924 (3d Cir. 1990) ("[I]t is plain that allowing the amendment here would inject new issues into the case requiring extensive discovery.  The motion not only came four and one-half months after the information on which it was based became available, but also after the close of an extended discovery period . . .").
[33] *See Vertis,* 536 B.R. at 616 ("RAG's reasons for not seeking an amendment sooner are not convincing.  The timing of its Motion to Amend is suspicious, and its argument that fact discovery just recently closed was, as Defendants contend, deceiving.").

19.     The Motion to Amend comes too late based on the circumstances of this case.

**B.     *The Trustee's proposed amendment unduly prejudices the Defendants.***

20.     Inquiries into prejudice require the court to focus on hardship to the defendants if the proposed amendment were to be permitted.[34] In this analysis, the Third Circuit considers the impact of additional discovery, cost, and preparation to defend against new facts and theories.[35]

21.     The Defendants argue that to be forced to defend against the Proposed Amended Complaint would constitute undue prejudice. Specifically, the Defendants proffer that had they known that actual intent was a factor, they would have sought testimony from multiple persons, including: (i) the persons who supplied the funds that were loaned to the Debtors under the Credit Agreement, who are all Canadian citizens, and some of whom "are of advanced age with potential health issues that have arisen during the time of undue delay caused by the Trustee;" and (ii) former employees.[36] In response, the Trustee argues that the need to take additional discovery, in and of itself, does not constitute prejudice and suggests that the Defendants are manufacturing a need to take depositions noting that the Defendants did not seek to depose any of the named persons in connection with the Trustee's allegation that the transfers were not made for reasonably equivalent value.[37] The Trustee suggests minimal additional discovery will be required.[38]

---

[34] *Adams*, 739 F.2d at 868 ("[T]he issue of prejudice requires that we focus on the effect on the defendants."); *Cureton*, 252 F.3d at 273.

[35] *Id. Compare Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 655 (3d Cir. 1998) (finding undue prejudice due to the extended duration of the case and the substantial effort and expense of resolving a prior motion to dismiss), *with Adams*, 739 F.2d at 869 (finding no undue prejudice due to a lack of need for extensive additional discovery, and contrasting the plaintiffs' case to cases where undue prejudice was found for that very reason).

[36] Anwering Brief at 15.

[37] Reply Brief at 8.

[38] *Id.* at 9.

22.     While the Trustee is correct that the need to take additional discovery does not necessarily create prejudice to defendants, it can.[39] Here, there is no question that the Trustee's new assertion of actual fraud is fundamentally different than his assertion of constructive fraud and thus requires Defendants to muster a different type of evidence in defense.[40] A single transfer can form the basis for claims of both constructive and actual fraud, but the elements of the claims are different and the evidence necessary to prove or defend against the factual allegations proving those elements are entirely distinct. "Other than the transfer itself, which defines damages, the elements of the claims are different. The transferor's intent to hinder, delay or defraud a creditor is the central element of a claim for actual fraud, but is immaterial to constructive fraud. The effect of the transfer upon the transferor's solvency is material to constructive fraud, but not actual fraud."[41]

23.     It is evident that additional discovery would be warranted if the Court granted the Motion to Amend. The Trustee has not responded to the Defendants' assertions that the loan participants live in Canada and are of advancing age and failing health. Thus, the Defendants may have been prejudiced by the passage of time.[42] In these circumstances, to allow the proposed amendment would constitute undue prejudice.

---

[39] *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990).

[40] These two forms of fraudulent conveyance pursuant to § 548(a)(1) are "disparate strands" individually and distinctly derived from the Elizabethan statute. 5 COLLIER ON BANKRUPTCY ¶ 548.01[1][b] (Alan N. Resnick & Henry J Sommer eds., 16th ed.).

[41] *In re Grube*, 500 B.R. 764, 775 (Bankr. C.D. Ill. 2013).

[42] *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 123 (W.D. Pa. 2010) ("Given the present record, the contents of Plaintiffs' motion and the arguments of the parties, Progressive has demonstrated that Plaintiffs' delay is not justified. In addition, to permit the proposed amendment would place an unwarranted burden on the Court given that the parties intend to relitigate discovery issues that have been previously resolved and further compound this litigation by inserting additional parties as well as factual and legal matters into an already over-litigated case.")

*C.    The Trustee's proposed amendment is not in bad faith.*

24.    Inquiries into bad faith require courts to consider the plaintiff's motives for not having amended the complaint sooner.[43]  In evaluating whether a motion to amend is brought in bad faith, the scope of the court's inquiry is limited to, "whether the motion to amend *itself* is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith."[44]

25.    The Defendants identify four main reasons for bad faith: (i) both this adversary proceeding and the Welke adversary proceeding[45] lack merit;[46] (ii)  the Motion to Amend is akin to a situation in which a trustee waits until the last minute to file a defective complaint without prior investigation and is asking the court to save his defective complaint;[47] (iii) the Trustee failed in the Proposed Amended Complaint to correct allegations in the Complaint that have been proven false by discovery;[48] and (iv) the Amended Motion is a means to prolong this case in hopes of coercing a settlement to which the Trustee is not entitled.[49]

---

[43] *See Adams,* 739 F.2d at 868; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 614 (3d Cir.1987) ("[T]he question ... of bad faith, requires that we focus on the plaintiff's motives for not amending their complaint earlier").

[44] *Trueposition, Inc. v. Allen Telecom, Inc.,* No. CIV.A.01-823 GMS, 2002 WL 1558531, at 2 (D. Del. July 16, 2002).

[45] Complaint of George L. Miller, Chapter 7 Trustee, Against Edward Welke and John Does 1–100 pursuant to 11 U.S.C. 544 and 548, Florida Statutes Title XLI, § 726.105 *et seq.*, Federal Rule of Bankruptcy Procedure 7001, and Applicable Law, Mar. 3, 2016, Case No. 14-10486 Adv. No. 16-50088 ECF No. 1.

[46] Answering Brief at 8.

[47] *Id.* at 9.

[48] *Id.* at at 9-10.

[49] *Id.* at 8.

26.     The first three reasons advanced by the Defendants are not germane to considerations of bad faith in the context of a Motion to Amend.[50]  The Motion to Amend is not a time in which the court evaluates the merits of the original complaint or the plaintiff's behavior, generally, in the case.  As to the fourth reason, while the Court can look to the Trustee's motive in filing the Motion to Amend, the crux of this assertion is also that the underlying complaint is meritless so there is nothing to settle.[51]  Accordingly, I do not find that the Motion to Amend was filed in bad faith.

**D.     *The Trustee's proposed amendment is futile.***

27.     Even if the Proposed Amended Complaint was not unduly dilatory or prejudicial, to allow the Proposed Amended Complaint would be futile, and so the Trustee's Motion to Amend should be denied.

28.     To permit an amended complaint to be filed is futile if it would fail to state a claim upon which relief can be granted.[52]  In addressing futility, courts apply the same legal sufficiency standard as applies under Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

---

[50] *See Roquette Freres v. SPI Pharma, Inc.*, No. C.A. 06-540GMS, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) ("Nothing Roquette has presented suggests willful or deliberate conduct, the elements necessary for bad faith, on the part of SPI in bringing the motion. Clearly, Roquette disagrees with the merits of the inequitable conduct allegations, but that is not enough to show bad faith."); *Trueposition*, 2002 WL 1558531 at *1 ("Allen claims that Trueposition filed its initial complaint with the knowledge that the asserted patents were invalid. . . . Regardless of whether these allegations are true, they are not relevant to the court's determination of whether leave to amend should be granted.").
[51] The Defendants did not argue as a basis for bad faith that the Motion to Amend was filed as a strategy to prolong the case specifically by avoiding an impending adverse summary judgment. Such could be an improper purpose. *See Vertis*, 536 B.R. at 616–17.
[52] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

'state a claim [for] relief that is plausible on its face.'"[53] It is insufficient to provide "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."[54]

29.    Further, the Trustee's proposed amended claims are subject to heightened pleading under Rule 9(b).[55] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Allegations of "date, place or time" fulfill the requirement to plead the circumstances constituting fraud or mistake with particularity, though plaintiffs are free to use alternative means to "[inject] precision and some measure of substantiation into their allegations of fraud"[56] Fraudulent intent, which may be pled generally, has historically been shown using badges of fraud.[57]

30.    The Defendants argue that the Trustee's Motion should be denied, positing that to amend the Complaint to add the proposed claims would be futile because the Trustee fails to adequately plead actual fraud.[58] Specifically, the Defendants argue that the Trustee

---

[53] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)).

[54] *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555)).

[55] *See In re Oakwood Homes Corp.,* 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."). *See also Image Masters, Inc. v. Chase Home Fin.,* 489 B.R. 375, 393 (E.D. Pa. 2013) ("To state a claim for avoidance of a transfer based upon actual fraud under both the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(A), and PUFTA, 12 Pa.C.S. §§ 5104(a)(1), a plaintiff must allege that the debtor made the transfer with the actual intent to hinder, delay or defraud a creditor."). *Image Masters* makes reference to a provision of the Pennsylvania Uniform Fraudulent Transfer Act that is identical to FLA. STAT. § 726.105(1)(a).

[56] *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984).

[57] *In re DBSI, Inc.,* 477 B.R. 504, 509 (Bankr. D. Del. 2012); *In re Charys Holding Co., Inc.,* No. 08-10289, 2010 WL 2774852, at *3 (Bankr. D. Del. July 14, 2010).

[58] Answering Brief at 11-12.

offers no facts to support an inference the execution of the Credit Agreement, the Two Year

Transfers and the resulting foreclosure were all part of a "scheme."

31.    The Trustee's entire argument in response is that:

[t]he "operative facts" alleged in the original complaint, supplemented by the
proposed amendment, (i) establish the insider relationship between the Debtor and
the receipient of the transfers at issue; (ii) call into question whether the Debtor
received any consideration for the conveyance, given that it transferred to insiders an
amount greater than the principal amount received in the SWZ Loan during the
calendar year; (iii) alleges that the Debtor was balance-sheet insolvent during the
calendar year (2012) in question; (iv) specifically identifies what was transferred (the
Two-Year Transfers and the Foreclosed/Transferred Assets); and (v) contains facts
similar to those in *National Service Industries* which were found sufficient to establish
secrecy or concealment of the transaction at issue – namely, a closely-held company
where there is evidence of insider transfers.[59]

32.    In the Complaint, the Trustee sufficiently identifies by date and amount the

Two Year Transfers and the Foreclosed/Transferred Assets. But, he sets forth no facts

regarding the alleged "scheme designed to insulate the Debtor's business from non-insider

claims" beginning with the loan made under the Credit Agreement and culminating with

the forclosure.[60] The Trustee does not plead the date, time and place of any scheme related

to the loan. The Proposed Amended Complaint contains no facts pertaining to the

negotiation and entry into the Credit Agreement giving rise to the Two Year Transfers and

the Forclosed/Transferred Assets despite averring that entry into the Credit Agreement was

part of the fraudulent scheme.

33.    The only facts pled with respect to the Credit Agreement are the parties to the

loan, the terms of the loan, the uses of the proceeds of the loan, and that the loan was

funded.[61] Because the Trustee does not seek to avoid the obligation entered into under the

---

[59] Reply Brief at 7-8.
[60] Opening Brief Ex. A ¶ 115.
[61] Complaint at ¶¶ 14–16.

16

Credit Agreement, if anything, the Credit Agreement is merely the backdrop for the Two Year Transfers, which are the payments to SWZ on the loan, and the Foreclosed/ Transferred Assets, which are the assets transferred to SWZ as a result of the foreclosure.[62] Further, the new factual allegations set forth in the Proposed Amended Complaint regarding transfers to others in 2012 do not state that (or how) those transfers—which the Trustee also does not seek to avoid—relate to the Credit Agreement. Simply pleading the existence of the loan does not provide the Defendants particularized notice that it was part of some larger scheme.[63]

34.    Assuming that the Trustee had pled the terms of a scheme, the Trustee could then plead fraudulent intent more generally through badges of fraud, which include, but are not limited to: (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction.[64] No single badge of fraud is dispositive.[65] Plaintiffs must plead sufficient facts to support badges of fraud.[66]

35.    The Trustee did sufficiently plead the insider relationship between the Debtor and SWZ, the recipient of all of the transfers.

---

[62] Of course, the existence of the Credit Agreement and the loan is relevant to the preference analysis as it can constitute the antecedent debt (11 U.S.C. § 547(b)(2)), and the constructive fraudulent conveyance analysis as it might supply a defense (11 U.S.C. § 548(A)(1)(B)(i)).

[63] See e.g., Glover v. F.D.I.C., 698 F.3d 139, 148 (3d Cir. 2012) (ruling tht an allegation that is "entirely peripheral" to the complaint's central allegations does not give notice that a defendant is culpable for the alleged conduct).

[64] In re Fedders N. Am., Inc., 405 B.R. 527, 545 (Bankr. D. Del. 2009).

[65] DBSI, 477 B.R. at 509.

[66] Charys, 2010 WL 2774852 at *5.

36.    The Trustee claims to have pled a lack of consideration for the transfers by pleading that in 2012 the Debtor transferred to insiders an amount greater than was received from SWZ through the loan.[67]  First, the Trustee does not seek to avoid the loan transaction itself so it is not clear how this allegation proves lack of consideration for the Two Year Transfers (especially those made in 2013) or the Forclosed/Transferred Assets (made in 2013).  Second, the two factual allegations that give rise to that comparison are paragraph 16 of the Complaint which states that SWZ funded $501,000.00 of the loan on April 11, 2012,[68] and proposed paragraph 114 which states that the Debtor paid $593,208.00 to insiders and shareholders in 2012.[69]  Paragraph 114 is the first and only paragraph in which KD Consulting Group, Dean Drouin, and Caroline Welke—all alleged recipients of payments from the Debtor in 2012—are mentioned, and nothing in the Complaint establishes them as insiders or shareholders.  There is also nothing supporting the bald statement that Tax Help is an insider or shareholder.  Further, the Trustee does not plead any facts alleging that any of the payments listed in paragraph 114, whether the payment is or is not a payment to an insider or a shareholder, is in consideration for amounts received pursuant to the loan with SWZ.

37.    The Trustee also asserts that he has pled insolvency as a badge of fraud.  The only factual allegation in the Complaint—and in the Proposed Amended Complaint—offered in support is a conclusory statement of insolvency in paragraph 35, "The Debtor's records, including the Debtor's tax returns, suggest that the Debtor was insolvent on a "balance sheet" basis at the beginning and end of calendar year(s) 2012."[70]  Since the

---

[67] Reply Brief at 8.
[68] Opening Brief Ex. A ¶ 16.
[69] *Id.* at ¶ 114.
[70] Opening Brief Ex. A ¶ 35.

Motion to Amend, the Court ruled in the Welke adversary proceeding that such an allegation is too conclusory for transfers in 2012.[71] The same is here as well. And, as in the Welke adversary proceeding, there is no allegation in the Complaint or Proposed Amended Complaint with respect to solvency in 2013.

38.    The Trustee inappropriately relies on *Forman v. Kelly Capital, LLC (In re National Service Industries, Inc.)*[72] for secrecy or concealment of the transaction, another badge of fraud. Here, the Trustee argues that the Proposed Amended Complaint "contains facts similar to those in *[Forman]* which were found sufficient to establish secrecy or concealment of the transaction at issue – namely, a closely-held company where there is evidence of insider transfers."[73] In *Forman*, the Debtor's board was entirely comprised of its two stockholders,[74] and when reviewing the allegations of the complaint for badges of fraud, including concealment, the court stated, "[a]lthough the transactions were not concealed from other board members, *this factor is not relevant here* because Kelly and Spriggs were the only directors and controlled the Debtor."[75] So, too, it is not relevant here. At most, therefore, the Trustee has adequately pled one badge of fraud.

39.    A court's inquiry into futility, and therefore whether a complaint would survive a Rule 12(b)(6) motion to dismiss, is not determining "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[76] Here, on the facts as alleged in the Proposed Amended Complaint, the Trustee's

---

[71] *Miller v. Welke (In re United Tax Grp., LLC)*, No. 14-10486 (LSS), 2016 WL 7235622, at *4 (Bankr. D. Del. Dec. 13, 2016).
[72] *Forman*, 2015 WL 3827003.
[73] Reply Brief at 8.
[74] *Forman*, 2015 WL 3827003 at *1.
[75] *Id*. at *5 (emphasis supplied).
[76] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

additional claims do not meet the heighted standard of Rule 9(b) and thus would not survive

a motion to dismiss. The Motion to Amend, therefore, is futile, and the Trustee should not

be entitled to offer evidence to support his new claims.

### E. The proposed amendment does not relate back to the filing of the Complaint and so is time barred.

40.    Defendants also assert that the Proposed Amended Complaint is untimely.

Pursuant to 11 U.S.C. § 546(a)(1)(A), "an action or proceeding under section 544 . . . [or]

548 . . . of this title may not be commenced after the earlier of the later of 2 years after the

entry of the order for relief . . ." As the bankruptcy case was filed on March 5, 2014, the

statute of limitations on the Trustee's proposed amended claims ran months prior to the

filing of the Motion to Amend.

41.    The Trustee does not contend that the Proposed Amended Complaint was

filed prior to the expiration of the statute of limitations. Rather, he asserts that the amended

complaint relates back to the filing of the Complaint pursuant to Federal Rule of Civil

Procedure 15(c)(1)(B),[77] which provides that "[a]n amendment to a pleading relates back to

the date of the original pleading when: the amendment asserts a claim or defense that arose

out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the

original pleading . . . ." The Trustee argues that the Proposed Amended Complaint, which

seeks to avoid the same transfers and the same relief meets the standard.

42.    The interaction between the statute of limitations and Rule 15(c) raises the

issue of fairness to the defending party,[78] namely whether the prior pleading provides the

---

[77] Incorporated by reference in FED. R. BANKR. P. 7015.
[78] *Global Link Liquidating Trust v. Avantel, S.A. (In re Glob. Link Telecom Corp.)*, 327 B.R. 711, 716 (Bankr. D. Del. 2005).

other party adequate notice. "[T]he touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'"[79]

43.     The Third Circuit recently expounded on the limits imposed by the notice requirement of Rule 15(c)(1)(B) in *Glover v. F.D.I.C.*, and has interpreted the rule to require that fair notice be given of both a party's proposed amended claim and the grounds on which it rests.[80] The original complaint must notify defendants of the basis for liability a plaintiff would later seek to advance in a proposed amended complaint.[81] Thus, the original complaint must have provided the opposing party fair notice of both the facts and the legal theory on which the amending party seeks to proceed.[82] "[A]mendments 'that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously.'"[83]

44.     Because both the Complaint the Proposed Amended Complaint fail to adequately plead actual constructive fraud, the Proposed Amended Complaint cannot relate

---

[79] *Glover*, 698 F.3d at 146 (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)).

[80] *Id.* (quoting *Baldwin Cty. Welcome Ctr.*, 466 U.S. at 149 n.3) ("[W]here the original pleading does not give a defendant 'fair notice of what the plaintiff's [amended] claim is and the grounds upon which it rests,' the purpose of the statute of limitations has not been satisfied and it is 'not an original pleading that [can] be rehabilitated by invoking Rule 15(c).'").

[81] *Id.* (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C.Cir.2008)) ("Put another way, the underlying question for a Rule 15(c) analysis is 'whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'").

[82] *Id.*

[83] *Id.* at 146 (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C.Cir.2002)); *White v. PNC Financial Services Group, Inc.*, 2017 WL 85378 *13 (E.D. Pa Jan. 10, 2017) (applying *Glover* and ruling that RICO claim did not relate back to complaint alleging RESPA claims because the "original complaint is void of any language suggesting an 'enterprise' or any of the other buzz words that attend a RICO claim").

back to the Complaint. The Complaint does not provide adequate notice—either of the facts or the legal theory—such that the Defendants would be expected to defend against a claim of actual fraud.[84] Thus, the Proposed Amended Complaint does not relate back under Rule 15(c).

**WHEREFORE, IT IS HEREBY ORDERED** that the Motion to Amend is **DENIED**.

Dated: February 28, 2018

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[84] *Glover*, 698 F.3d at 146.